UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-60126-LEIBOWITZ

UNITED STATES OF AMERICA,

                                Fort Lauderdale, Florida

              Plaintiff,

                               August 15, 2025

        vs.                   1:29 p.m. - 2:39 p.m.

KISEAN PAUL ANDERSON,

                    Defendant.         Pages 1 - 60
------------------------------------------------------------

SENTENCING HEARING
BEFORE THE HONORABLE DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE GOVERNMENT:    MARC S. ANTON, AUSA
                        TREVOR C. JONES, AUSA
                        United States Attorney's Office
                        500 East Broward Boulevard, Suite 700
                        Fort Lauderdale, Florida 33394
                        marc.anton@usdoj.gov
                        trevor.jones@usdoj.com

FOR THE DEFENDANT:     ZELJKA BOZANIC, ESQUIRE
                        Bozanic Law, P.A.
                        17100 Royal Palm Boulevard, Suite 1
                        Weston, Florida 33326
                        info@bozaniclaw.com

ALSO PRESENT:         AMANDA COOK, SPECIAL AGENT
                        ELIZABETH ROBBERT, USPO

REPORTED BY:          GINA RODRIGUEZ, RPR, CRR, CRC
                        Federal Official Court Reporter
                        299 East Broward Boulevard
                        Fort Lauderdale, Florida 33301
                        gina_rodriguez@flsd.uscourts.gov

(Case called to order of the court at 1:29 p.m.)

THE DEPUTY CLERK: Calling the matter of the United States versus Kisean Paul Anderson. Case Number 24-criminal-60126.

Counsel, please announce your appearances for the record, beginning with the Government.

MR. ANTON: Good afternoon, Your Honor. Marc Anton and Trevor Jones on behalf of the United States.

THE COURT: Gentlemen, good afternoon.

Agent Cook, good afternoon.

MS. BOZANIC: Good afternoon, Your Honor. Zeljka Bozanic on behalf of Mr. Kisean Anderson, who is present.

THE COURT: Mr. Anderson, good afternoon.

Ms. Bozanic, good afternoon.

We're here for sentencing. Let me tell you, Ms. Bozanic, what I've reviewed. I've reviewed the indictment in this matter; of course I've presided over all pretrial motions and the trial of this matter; I've reviewed the final PSI report and all addenda; I've reviewed the attorney objections, Government responses to the objections, Government objections, and attorney response, either in the PSR itself or at Docket Entries 145, 147, and 150; I've reviewed sentencing memoranda docketed by defense at Docket Entries 160 and 161; I've reviewed all the character letters docketed at Entry 159;

and, of course, I presided over the sentencing hearing of Ms. Turner on July 23rd where Agent Cook testified. I know Ms. Bozanic was there for that as well and findings were made that may, depending on what the parties tell me, be equally applicable to this case.

So that's everything that I've reviewed, Ms. Bozanic. Is there anything else that you wish for me to review prior to sentencing?

MS. BOZANIC: Judge, I did get a character letter from the mother of Mr. Anderson, and I would like to hand it over to the Court. And I did get another character letter literally a few minutes ago.

THE COURT: You can pass them both up.

MS. BOZANIC: Yes. Thank you.

THE COURT: And I'll review them right know. I assume they're not that lengthy.

MS. BOZANIC: No, Your Honor.

THE COURT: Does the Government want to see these, or have you seen them?

MR. ANTON: I have not seen them, Your Honor, no.

THE COURT: I will hand them down in a second.

MS. BOZANIC: I have a copy for them.

THE COURT: You have them?

MS. BOZANIC: Yes, Your Honor.

THE COURT: Great.

Okay.  So the first document that I reviewed that will be referenced as part of this record for purposes of today, just for sake of keeping the record clean, we'll call this Court Exhibit 50.  So it's far apart from anything that Agent Cook did in July.  That's how it will be known.  It is a two-page email letter.  Again, just so that the parties can follow it for purposes of the docket, the writer has the initials JR.  Just one moment.

(Marked for identification as Court Exhibit 50.)

THE COURT:  I've rereviewed the second letter handed up by Ms. Bozanic.  It will be known as Court Exhibit 51.  It is approximately half-page, small-type written letter and signed by Mr. Anderson's mother.  It will be known as 51 for purposes of this proceeding.

(Marked for identification as Court Exhibit 51.)

THE COURT:  Ms. Bozanic, anything else you wish for me to review?

MS. BOZANIC:  No, Your Honor.  Thank you.

THE COURT:  Okay.

Anything that the Government wants me to review that I haven't named?

MR. ANTON:  No, Your Honor.

THE COURT:  Okay.  Thank you.

So I'll take it in whatever order you wish, but let's do any outstanding objections.  It seems to me from the last

review of the PSR that much has been resolved, but I leave it -- we'll start with you, Ms. Bozanic, to tell me what you think is still outstanding.

MS. BOZANIC:  Judge, I understand that the Court's previous ruling in Ms. Turner's case was made, I think it was on July 23rd.  I would like to just renew -- I guess adopt Mr. Dominguez's argument.  I'm not going to ask to cross-examine the agent.

THE COURT:  You're not.  You don't want Agent Cook to testify today.

MS. BOZANIC:  No, Your Honor.

THE COURT:  Okay.

MS. BOZANIC:  Not -- I think the Court -- I don't want to waste everybody's time.  I think the Court is well aware of all the evidence.  I think we're not here for the purposes of restitution.  I do have a problem with the restitution amount, and we're not here for that.  I do want to note that I'm just going to adopt the arguments made by Mr. Dominguez as part of the record.  And I have my objection, as far as the amount of loss and the number of victims, but I -- you know, we'll stand at that.

THE COURT:  Okay.  So what the Court intends to do in light of that proffer, and of course I'll hear from the Government if they think I'm missing anything, is that I intend to make the same findings as to loss amount for purposes

of the guidelines, and number of victims for purposes of the guidelines as were made at the July 23rd sentencing hearing for Ms. Turner. I'm doing so on the same basis. The trial, the evidence provided by the Government at that hearing, and the credibility findings that I made with respect to Agent Cook. And specifically Ms. Bozanic is not seeking any further examination of Ms. Cook. Although she would be entitled to it, and I would give it to her, she is standing on the objections of Mr. Dominguez, which, to be clear -- and if there's something else, Ms. Bozanic, you should speak now or it's waived -- is simply the calculation of intended or actual loss for purposes of the guidelines, whichever is greater, which I made at the 23rd, that is preserved on the same basis that Mr. Dominguez preserved it, and then ten or more victims.

MS. BOZANIC: Yes, Your Honor.

THE COURT: For purposes of the guidelines.

Those are the only two things that you're preserving, correct?

MS. BOZANIC: Yes, Your Honor.

THE COURT: Anything else from the Government?

MR. ANTON: No, Your Honor.

THE COURT: All right. Let me ask you then. So with all other objections then, let me just do this before I calculate the range so that I -- I just want to make sure for the protection of the Defendant. The addendum to the

presentence report on the criminal history category now calls Mr. Anderson a Category I, Roman Numeral I, but it says the issues are partially resolved.

So is there anything on criminal history category that remains?

MS. BOZANIC:  Yes, Your Honor.  If -- I believe that the conduct in that case in California that gets Mr. Anderson one point is a -- the same relevant conduct as in this case.  I think that it should not be counted as a prior sentence.  And the only difference between a Category I and it not counting as a prior sentence at all would mean that Mr. Anderson would qualify for a zero-point offender reduction of minus two.  I believe that this is not a prior sentence based on 4A1.2, and it is a sentence that was imposed after the Defendant's conduct in the instant offense, but prior to the sentencing on the instant offense.  And it is the same course of conduct or common scheme or plan.

I know that the Government went as far as counted the conduct from outside of the period of the indictment.  So the indictment obviously has different dates from the amount of loss that it has counted in this case.  I think that they're starting with conduct in 2021, and Your Honor previously ruled that that conduct is relevant conduct and counts for the purposes of the intended loss.  My argument, Your Honor, is if we're counting all of that conduct, then we should count the

conviction in California as well.  We can't double count it. If we're counting all of this conduct that's outside of the indictment dates then why not count this one?  And I'll tell you one more thing, Judge.  In that case, it's about $170,000 of restitution that's been fully paid.  I do have documents here.  I had an attorney from California send me the documents. Every single cent of that restitution was paid.

So I understand that the Government may not have an interest in seeking restitution on behalf of anybody because it's been paid, but, Judge, it shouldn't disqualify him from a zero-point offender reduction of minus two.  It doesn't make a difference in the criminal history category at all.

THE COURT:  Thank you, Ms. Bozanic.

Mr. Anton.

MR. ANTON:  Judge, defense counsel is mischaracterizing the relevant conduct computation in this particular case.  The 2020 California conviction is just that, it's a conviction from California in 2020, dealing with a victim in California from 2020.  As the spreadsheet indicates, it's conduct from November 4th of 2021 forward that comprised the relevant conduct loss amount in this particular case that Your Honor made findings on.  So there is no double-counting. This is clearly under 41A1.2(a)(1), a prior sentence that is conduct that was not part of the instant offense.  It had nothing do with the instant offense; it had nothing to do with

the evidence in the instant case.  It is simply a prior conviction from 2020 that the defendant -- I'm sorry, it's a -- simply a prior conviction from 2020 that the defendant is currently on probation for.  There's absolutely no reason why it should be excluded under the criminal history point category.  It's not considered for relevant conduct for purposes of the loss amount that the Government is seeking and that Your Honor has found is appropriate in this case, and it's a one-point pointable offense.

THE COURT:  Yeah.  And just so that -- to make sure, because excellent attorneys have to deal with multiple versions of the PSR, we're all talking about Paragraph 62, correct?  Which is a 2020 grand theft of money, labor or property, Los Angeles Police Department, West Valley, California, that gets one point.  Is that -- I just want to make sure that -- is that what we're talking about?

MS. BOZANIC:  Judge, yes.  In the old PSI, it was 63.  And in the new one, it is 62.

THE COURT:  That's right.  And that's why I wanted to make very clear that the fight is about 62 in the final PSR.  And I agree with the Government, there is no goose/gander relevant conduct problem here.  This is separate and apart from anything that is being considered as relevant conduct in this case.  This is a prior arrest and conviction.  There is nothing in the evidence broadly construed, light most favorable to

the Government in the widest interpretation of the guidelines under relevant conduct, that is not the Court's view of Paragraph 62.

So, for that principal reason, and for the reasons stated by the Government today -- and they're to be commended actually because part of what they did was they cleaned up what was I think two points against the defendant, and they rightly drew it back to one point. So for all those reasons, the Court finds that Paragraph 62 counts for guideline purposes, your objection is preserved, Ms. Bozanic.

Let me, therefore, calculate the guideline range based on everything that we've done. I find that 2B1.1 is the guideline to be applied. There's unanimity on that. The final total offense level for guideline purposes is a 25. And I get there because it's a base level of 7. The loss amount, the loss table adds 16 offense levels. The 10 or more victim enhancement adds 2. That equals 25. Mr. Anderson is -- as I stated, has one criminal history point and is Criminal History Category I. So an offense level of 25 and a Criminal History Category I yields an advisory guideline range of 57 to 71 months.

Ms. Bozanic, any objection to the calculation?

MS. BOZANIC: Judge, we would ask for acceptance. And even though it wasn't mentioned in the initial objections, we did provide a letter of acceptance of responsibility, and I did

mention that in the sentencing memorandum, and I would ask the Court to consider giving Mr. Anderson a acceptance responsibility.

THE COURT: Okay. For guideline purposes, for guideline purposes, because it was not objected to, and the Government will not be sandbagged, I'm going to deem, for guidelines purposes, that the argument is waived. However, Ms. Bozanic can rest assured that I was planning to take this up on 3553(a). For purposes of this proceeding, this is for guideline purposes: 7 plus 16, plus 2, no subtraction at all for acceptance of responsibility, primarily because it's waived. I think there are some interesting questions here that we'll probably get to under 3553(a) as to whether acceptance should apply in this case for 3553(a) because I'm finding that the guideline argument has been waived. Had it been properly raised; I think this is a case that raises questions both for -- let me get it right so that Ms. Bozanic has her record. I think it raises very interesting questions had it been raised. Just one moment. I had it all day and now I lost the page. Just give me one second.

Yes. For 3E1.1A and B, I think it raises very interesting questions that had been much discussed by many judges in many circuits in many districts across the country. For purposes of today, I've made my finding for guidelines purposes, it's a 25, Roman numeral I, 57 to 71 months.

Any other objection?

MS. BOZANIC:  No, Your Honor.

THE COURT:  Any objection from the Government?

MR. ANTON:  Not to the guidelines as calculated, no.

THE COURT:  Any victims who wish to be heard?
Statutory victims.  Any victims.

MR. ANTON:  Not today, Your Honor.

THE COURT:  Okay.

I'd ask the Government for their view of the
appropriate sentence and any argument they wish to make.

MR. ANTON:  Judge, on behalf of the Government,
Your Honor has now determined that the appropriate guideline
range is 57 to 71 months, and the Government is asking for a
sentence of 60 months, five years, and feels that that is the
appropriate sentence in the instant case, which is commensurate
with his mother's sentence because they were in this together,
Your Honor.

But the defendant's history and characteristics
support this sentence.  This is a defendant who is not a child.
He is not a young star.  He's 35 years old.  But he is clearly
accustomed to living a celebrity lifestyle, a lifestyle that
perhaps at one time he could afford, but certainly no longer
can today.  Fancy cars, jewelry, houses, electronics, and other
high-end items seem to define his image and his lifestyle, but
clearly, he doesn't like to pay and instead relies upon his

celebrity status to defraud his victims, behavior that started a long time ago and continues until today.

Just a brief review of the Internet and the PSI shows that as early as 2015, defendant was ordered in a civil suit to pay over $356,000 for failing to pay watches -- pay for watches.

In 2016, he was ordered to pay $301,500 after failing to pay for jewelry in 2016.

He has a lengthy history of being sued again and again and again for failing to pay for jewelry with promises of payment.

As Your Honor has already made findings from 2021 to the present, we have the relevant conduct as outlined on the Government's relevant conduct loss spreadsheet -- all a similar M.O.  Each time he would approach individuals for the purchase of high-end electronics, jewelries, cars, or whatever items he wanted, he would perhaps make a small down payment, or he would rely upon his good faith and his celebrity status to basically entrust a victim with believing that he would pay. When final payment was due or when any payment was actually due, he would, like you saw at trial, submit a fake wire receipt purporting to pay for that particular jewelry.

If that wasn't successful, checks that bounced were paid and purportedly used to pay the victims for their jewelry, watches, electronics, or other high-end valuables.

If that didn't work, he would attempt, at that point, to bully victims.  He would claim it was their fault.  He would string them along.  And the long and short of it is, as Your Honor saw, sometimes it was days, sometimes it was months, sometimes it was never.  Victims had to resort, again, to the legal system to get paid for their property.  Oftentimes, they had to sue, other times they resorted to contacting the police, who as you know in this particular case executed a search warrant and only then recovered a handful of the property that was essentially stolen by this particular defendant.

But, Judge, as you see, the conduct isn't just civil lawsuits; it's not just the relevant conduct on the loss spreadsheet; it's the conduct that's also outlined in the PSI.  And due to the age in which the defendant was convicted of certain offenses, I won't go into detail, but in Paragraph 66, it was conduct that's relevant to Your Honor's consideration.  And in Paragraph 68, there is conduct that's relevant to Your Honor's consideration, because that's essentially when the defendant's criminal conduct started.  He is a thief through and through.

But it didn't just end back then, 15 years ago.  It continued with civil lawsuits, with the instant case, but, most importantly, he was convicted of grand theft in Los Angeles in 2020, for offenses that occurred in 2020.  But the conviction occurred on November 23rd, of 2023.  And the conduct in that

case is identical to the conduct for which the defendant was convicted here in federal court.  Identical.

And I've asked that Your Honor take a look at Paragraph 62, where it discusses that according to an investigation report on October 23rd, 2020, law enforcement received a complaint from Engagement Guys Jeweler that the defendant had not paid for jewelry he had taken.  The victim reported that on October 21st, 2020, the defendant agreed to purchase jewelry.  That same day, a representative of the jewelry business traveled to the defendant's home in Encino, California.  Despite the agreement that the defendant could not wear the jewelry until payment was tendered, he convinced the representative to allow him to try on the jewelry.  Subsequently, the defendant then left his residence wearing the jewelry in his vehicle.  The representative attempted to follow the defendant, but he was prevented from doing so by the defendant's security.

Subsequently, the defendant did not answer calls regarding payment for the items.  The defendant's mother sent the victim an electronic correspondence that contained ACH wire transfer information; however, the victim claimed that the transfer was fraudulent and that no monies was received.  The defendant was later arrested on October 23rd, 2023.

Those facts, Your Honor, are identical to the scheme that he was convicted of here in federal court.  He was

convicted of that offense and placed on probation.  The instant offense occurred while the defendant was on probation for previously committing the exact same scheme, and yet that was not a deterrent either.  And there are other contacts with the law and the legal system as outlined in the PSI, many of them dealing with jewelry and failing to pay because the defendant either could not or did not want to pay the items that he promised these victims he would pay for.

Judge, his criminal activity has nothing do with his boating accident; it has nothing to do with PTSD; it has nothing to do with being overweight or any other health conditions the defendant might have; it is solely about his addiction to material items that he cannot afford -- or that he does not want to pay for -- and so he steals them instead.  The character letters that Your Honor reviewed, want you and attempt to portray the defendant as one of, quote, "integrity and strong moral compass."

Judge, this defendant is anything but that.  He is a thief and a conman, pure and simple, with full knowledge that he and his mom were paying with fake wire receipts.  He would bully and threaten victims until they were forced to seek legal help or the police.  And even a felony conviction and probation didn't stop him from continuing to commit his current crimes, crimes for which he benefited, not his mom.  Remember that's important because at Janice Turner's sentencing, the argument

was made, "Well, she should get a reduction because it wasn't really for her benefit; it was all for his benefit."  And, in fact, that's the truth in this case.  But they hatched this scheme together because, Your Honor will clearly remember, there were text messages between the defendant and his mom: "Just send them their fake receipt."  This was their M.O., and it continued on and on and on.  And who benefited?  The defendant benefited.

The fact this some monies were paid back eventually or recovered or seized or paid back as a result of civil lawsuits is immaterial, because the defendant continued again and again and again to commit fraud.

Judge, in this particular case, a five-year sentence is more than appropriate and justified.  And I'd ask that Your Honor impose that sentence, and at the end of the imposition of the sentence, remand him to custody.  The defendant is a thief who continues to commit his crimes despite even being on probation for the exact same offense.

Thank you.

THE COURT:  Thank you, Mr. Anton.

Ms. Bozanic, I'd ask you for your view of the appropriate sentence in this case and any argument you wish to make.

MS. BOZANIC:  Thank you, Your Honor.

Judge, Mr. Anderson is 35 years old.  I have laid out

a lot of the background information about him in my motion for downward variance that was filed sealed, and it was filed sealed for a specific reason because I'm not going to talk about certain details on the record in front of the media.

I happen to view Mr. Anderson differently than the Government and many other people.  Although he committed this crime, and he was found guilty by the jury, and he is guilty of the crime, Judge, I think that Mr. Anderson, even though he's 35 years old, still in some ways acts like a 16-year-old or a very young individual.  You know, him having a boat accident is not an excuse, but as you can see in the letter from his doctor, it affected him in many ways.  I'm not trying to make an excuse for him doing certain things.  Judge, there was times when he was paying everything.  He obviously has had business managers.  At some point after the accident, his mother took over and became his business manager.  She wasn't that good at it; she's never had any training; and money went in, and money went out.

Your Honor is very familiar with the evidence in this case.  There were bank statements that showed that $700,000 would come in, in a month, and $700,000 goes right out.  There were text messages that Your Honor heard and saw as evidence where Sean keeps telling -- Mr. Anderson keeps telling his mother, "Mom, just do this for me one more time."  "Mom, you know, I got this watch; pay for it."

And at some point, she says, "Sean, we don't have any more money; I can't pay for it."

Sean -- Mr. Anderson is a person who had no clue about his finances and still to this day doesn't know what's going on with his finances.  Right now he knows that he has hit the rock bottom.  And I don't think that at the time when this was happening, he had any clue of what money was coming in.  He would have to ask his mom, "Mom, Zelle me $200."  He would ask his mother, as his business manager, for any money.  It was his way to buy things that he was addicted to.  Yes, I will say that.  There's nobody that I know that has such an addiction to jewelry and watches, and it's the circle that people fall into.  And him, as a 16-year-old who rose to fame overnight while his mother was in prison, he had no guidance.  He lived in bad neighborhoods.  He was borderline homeless and was homeless at some point and had nothing -- he had nobody to guide him, had no role models.  His only role model, who was his mother, was in prison at that age.  He lived with his brother who was 22 years old.  It was a bad neighborhood.  There were things that happened.  He left to get himself out of that situation.

He was persistent and made it and grew up overnight and got into that industry.  And it's a very, very difficult industry.  It's an industry where people flash jewelry and -- on social media and think they're relevant.  And it's an industry where people who follow people on social media think

that that somehow makes them feel important.

I'm not going to make excuses for him, but I think that in his mind, he felt that he needed to stay relevant with flashing jewelry and showing off a big TV and showing off materials things. And I think that based on the conversations and who I see he is today, after this conviction, he realizes that's all empty. He is left after having millions of dollars going through his bank accounts with, you know, repossessed cars, with leased cars that were never his, with rented houses that were never his. No one showed him how to invest money. No one advised him that he should invest money in stocks and bonds or something that he could actually have today. Money went in and money went out. And superficial things. He is left with nothing.

I think he recognizes that today. And again, you know, becoming famous overnight and just having money come easy and having to ask his business manager or his mom for money, it was his way to just make her, I guess, pay for things and thinking, "Okay, that's okay, I'll do this, I'll do this concert. I have this coming up. We'll just make it."

You could see based on the intended loss and based on the actual loss that those two numbers are disproportionate. Most of these people were made whole. Most of the businesses were made whole. And the restitution amount -- well, I'm not going to talk about restitution. We'll talk about that at the

restitution hearing. But the actual loss is three times less than the intended loss, at least. It's disproportionate. And I think that Your Honor obviously already ruled on his mother's sentencing that it should be a 3553 factor, and I'm asking you to consider that.

People got paid eventually, and that's not how it should be, obviously. COVID happened in '21, and that's when all of this started happening. Everything was locked down, there were no concerts, there were no shows. Money started being tight and Mr. Anderson just continued his watch and jewelry addiction.

Judge, as 3553 factors, I did lay out most of that in my memorandum that I wrote. Mr. Anderson is not who he seems to be on his PSI. I know that the Government has portrayed him as a thief. That's not who he is. He will repay all the restitution that's ordered by the Court, whatever is left. He has been working very hard since he was on home detention. He obviously cannot do any shows and perform and make money, but as soon as he's able to do that, he intends to repay every single cent of this money, just like he did in the California case.

I did speak to the attorney in California, and I do have the docket if Your Honor wants to see it. All the restitution has been paid in that case.

THE COURT: What's the nature of the disagreement then

on restitution?

MS. BOZANIC:  Judge, I'll give you one.  For example, Moses Services, Inc.  I have looked that up.  I did not receive any information from the Government about that.  It says $76,000.  Moses Services, Inc. is owned by Moshe, the jeweler, I forgot his actual name.  I don't know what this could be for, because the $285,000 was paid to the actual owner of the watch.  That was just a broker or --

THE COURT:  So I understand -- and you don't have to do this now, but you're giving me a sense of it.  There will be a restitution hearing within 90 days unless the parties work it out.  Ms. Shotwell will give us that date later.  But what you're basically saying is that there may be disagreements as to either -- whether Mr. Anderson or Ms. Turner actually owes a specific listed vendor money because until you see, let's call it, receipts and money flows, you're just not taking the spreadsheet at face value.  Is that -- and there's a second thing that you're saying, which is maybe someone listed is a broker or a middleman for someone else.  So there might be double counting of sorts.

But what I do hear you saying, and it's important because restitution has not yet been determined, is that those are:  Let's line up the vendors, let's line up the money flows.  But you're saying that once they're shown to be relevant conduct and that he actually went in a jeweler, if there is

unpaid monies, you don't intend to contest this spreadsheet.

MS. BOZANIC:  No, Judge.  I don't intend to contest it.  I can tell you that this particular -- and I actually went through this list with Mr. Anderson and Mr. Anderson quite frankly had no clue who was who.  I had to go see his mother with Mr. Dominguez --

THE COURT:  That's fine.  You don't have to know who is who today.  And I interrupted you rudely.  I just wanted to make sure you're not having it both ways.  You are standing up and saying things for the Court to consider that restitution has been paid, and that where there are clearly on this spreadsheet that we're both looking at, outstanding monies, that you yourself have stood before me and said:  "Every cent will be paid."  In other words, not everything is to be battled out like Moses Services, Inc.  Some are as clear as a cigar in a glass of milk, and you're standing here saying he's going to pay.

MS. BOZANIC:  Yes, Your Honor.  And I can also tell you that aside from that one, the only other thing that we're having an issue, based on my conversation with Ms. Turner, is Bo Coates, which is for some go karts, Ms. Turner has told me that the balance is $15,000 -- she has text messages, and I've received some text messages today, and I need to look at the receipts -- as opposed to 38,500 here.  So those are the disputes in restitution.

THE COURT:  And you'll either work it out or we'll have a hearing within 90 days, and I appreciate you clarifying for me, and I interrupted you.  You can continue, Ms. Bozanic.

MS. BOZANIC:  No problem, Judge.

And then just to clarify, I believe that Moses Services -- and I have verified this with the Government because I didn't receive anything.  I received some stuff from other people.  I believe they are seeking -- this was the gentleman who testified saying that he was blacklisted from working, and I believe that this may be, I guess, his lost income or something of that nature, which I don't think should be restitution.  But if it is something reasonable, we'll work it out, Your Honor.  So those are the only items that I think will be contested.  And if we can work that out, there will be no need for the restitution hearing.

THE COURT:  Okay.  Anything else, Ms. Bozanic?

MS. BOZANIC:  Judge, yes.

As far as the 3553 factors, Mr. Anderson, you know, and I attached some of the exhibits of him doing charity and feeding the homeless.  And obviously, a lot of people do that.  This was done since he was little.  He's done that regardless of this case.  It wasn't something that somebody started doing after this case.  He has done that for many years with his mother.  He has gone to Jamaica, Skid Row, fed the homeless.  He does it every Christmas, every Thanksgiving.  In Downtown

California.  There are photos of him online that I've found that I attached to my sentencing memorandum.  He actually rolls up his sleeves and does it himself.  He's not one of those guys who just gives money to charity.  He actually goes and does it because he remembers the situation he was in when he was 16 years old, and that he was once in need, and he gives back.

He does have a good heart.  He always tries to help people.  I don't think that the charges before us today define who he is.  I think that Mr. Anderson is just -- I know that he's very sorry for what he's done and for his actions, and I know that he wants to address Your Honor.  I also want to mention that he is a father figure in his four-year-old niece's life.  I'm not going to go into the details.  I did mention that in my motion for downward variance.  She's very attached to him.  He was also a -- the breadwinner for not only his mom and the sister and his niece and a lot of other people.  Obviously, that is not the situation right now.  But a lot of people rely on him.  He supported a lot of people, family, friends.  Has helped a lot of people.

Judge, I also wanted to point out that there are cases -- you know, in this case, we have 3-point -- I think -- 1.25 million of intended loss or perhaps -- I guess Your Honor ruled that it is over 1.5 million for the purposes of the guidelines.  I want to compare that to other cases.  Actually, after Ms. Turner's sentencing, there was a person who got

sentenced in this court -- well, not Your Honor, but in the Eleventh Circuit, and I'm sure you're aware, Issa Asad.  And I looked at that case because I found it very interesting that the man -- the amount of loss was a hundred-something million dollars.  And the Government, it was the U.S. Department of Justice, and all of these different people who got involved, and he got a five-year sentence.  His guidelines were somehow 168 to 210.  And yes, the Government worked out all of these deals where they forfeited money that they could, and I'm not sure what restitution was paid, but 60 months for fraud in a case where you steal 100-and-something million dollars?

So I kind of compare that to my client sitting here for, let's say, over 1.5 million, less than 3.5 million loss, and I think that we should consider that.  I don't think that Mr. Anderson deserves 60 months as the Government asks for.  I think that the 3553 factors should be considered.  I think that the other sentences, and I've listed some other cases, I'm not going to go through all of them.  But, for example, Dukens Eleazard, which happened to be my case -- actually, I'm sorry, the co-defendant was my case.  This man got 135- to 168-month guideline range and was sentenced to 60 months because the Government decided to offer a 371 conspiracy, which is a maximum of five years.

So, yes, there are cases where people steal $30 million, like in that case, in Dukens Eleazard, and are

only sentenced to five years.  I don't think that Mr. Anderson should be in the same category.  I also think that comparing him to his mother, and I know that, you know, he loves his mother and -- but I'm going to talk about it.  His mother testified and Your Honor found that obstruction applies.  She's sentenced to 60 months.  So I don't think that it's fair that he gets 60 months like his mother.  Mr. Anderson is also accepting responsibility.  He will address Your Honor and already accepted responsibility in his PSI.  I would ask Your Honor to consider that.

I just think that there is a need for the sentence imposed and there's deterrence.  And the need, I don't think that it's necessary to sentence him to 60 months.  In my sentencing memorandum, Your Honor, I asked for home detention. I understand that it's quite a bit departure from 57 months to home detention.  I understand that.  And I also understand that the Court is not going to treat Mr. Anderson any special or any different from anybody else, but I think that Mr. Anderson's circumstances, if you look at him as just Mr. Anderson, not, you know, a famous person, that has nothing to do with this. And I know the Court doesn't consider that.  He is a person who relied on other people, had no clue about his finances.  Not to lessen his role in this offense.  I was tempted on arguing minor role, Judge.  I didn't because I didn't think that I could actually -- because it's my burden, I didn't think that I

could prove that he had a minor role.  But he wasn't the one who got these receipts from anybody.  He wasn't texting the accountant or whoever it was to get these receipts.  He has no clue how to do anything.  If I send him a document to read that's like 15 pages, he's like, "Zeljka, what does this say?" He doesn't create these receipts, he doesn't get it from the accountants, he doesn't deal with banking.  If you ask him -- and we did this in the PSI interview -- "What accounts do you have?"  It's, "Ask my mother."  He has no clue.

And while the intent was to get the watches, and the intent was to maybe delay it and -- I really deep down believe that Mr. Anderson did not intend to just steal stuff as the Government says.  You know, temporarily or for a period of time.  But he paid people back.  It was delayed, and it's not right, and, yes, these people are victims, and it's not okay what he did, but he paid everybody -- well, most of the people back.

There was a lawsuit of $900,000 that's still out there.  I will tell you what happened with that because I want the Court to know.  Those two watches of $900,000, he got robbed in New York at a concert.  The person took off with those watches, so he couldn't do anything with it.  And, obviously, when he starts making money, he will pay that back. There is a pending lawsuit as well.

Judge, I wanted to point out for acceptance, and I

know Your Honor is saying that you will consider that. There was a case that was decided on May 22nd, 2025. It's called Kousisis versus U.S. It talked about a defendant who induces a victim to enter into a transaction under materially false pretenses still may be convicted for fraud even if the amount was paid back.

The reason why Mr. Anderson went to trial, and I want to make this clear, is not -- and I think that he's deserving of acceptance because of this case. Well, not because of the case, but because there was a theory that defense had before this case was decided. And I know that we argued that restitution paid or the money owed paid should be argued in court. The Government withdrew their objection at some point, and we got to talk about it.

But that was the whole defense. They paid these items back. And after this case came out, it became clear that that's no longer a defense. So before when Mr. Anderson decided to go to trial, we didn't have this case. Had this case been decided, I don't think we would necessarily have a defense. But I think we had a defense and there was a legal reason why he was advised to possibly go to trial. I think that Your Honor will hear from him and decide whether, you know, he's deserving of some type of a 3553 factor acceptance.

Judge, I will also ask that you will allow him, if you sentence him to a BOP sentence, to allow him to self-surrender.

He's been -- he has had no violations.  He's been in home detention since the trial.  It's been quite a long time. He's had absolutely no violations; he's complied with everything.  He's been at his home working at a studio.  He hasn't had any issues with probation, and that was verified in his PSI.

So I would ask that you allow him to self-surrender for 90 days, also due to the same medical issues that I discussed before.  He did have a -- he does have a pacemaker and has certain heart conditions, and I don't think BSO can take care of those.  I would like for him to get designated and possibly -- and I know Your Honor doesn't control whether he goes into a camp or not, but I think that he will have a much better chance and will have better medical care in a Bureau of Prisons -- in a camp versus getting taken into custody right now.

He does have some appointments.  And again, his mom is not around, and these didn't get scheduled until after.  I did speak to his doctor, Dr. Courtney Thomas.  He does want him to go and get EKG and MRI, and I think that's set for September 17th.  And I said to everybody, "Why wasn't this scheduled before?  We have a sentencing before."  Well, the mother is not around, no one scheduled this, and this is the first appointment that he was able to schedule.  I believe that I did attach that to my downward departure or downward variance

memorandum.

So for those reasons, Your Honor, I would ask you to downward vary to whatever Your Honor feels is appropriate in this case. I think that Mr. Anderson would like to address the Court as well.

THE COURT: Thank you, Ms. Bozanic.

And let me say before I turn to Mr. Anderson, I want to commend you and Mr. Dominguez and the two AUSAs in the case. I think that it's important that the public understand, in any trial, and certainly in this one, I only see what I see. I know that there's a lot that goes on when I'm not sitting up here, but by all appearances in this case, these were two very experienced defense attorneys that came in pretty close to trial. And the AUSAs. And they gave the best example of hard, but fair, blows against each other. There was no one that was ever brought to the Court's attention of getting anywhere close to a line that should not be gotten close to. And I commend the four attorneys for their conduct in the case as I saw it.

Mr. Anderson, you don't have to say anything if you don't want to, but if you wish to say anything on your own behalf before sentence is imposed, you may do so now. You can do so sitting or standing, whatever you're comfortable doing, sir.

THE DEFENDANT: Your Honor, I just want to tell you I apologize. I apologize. I've learned from my actions, and the

situation has taught me a lot.  And I definitely -- I'm asking just, you know -- I know I'm a bad bone to my family and there was a lot of people out there that definitely, you know, I mean -- you know, my music, my career, just everything that I have going on, I feel like there's a lot of stuff that I've done, and I'm not straying away from that.  All I'm asking for is just my apology, to accept my apology to the Court and you and just -- yeah, that's it.

THE COURT:  Thank you, Mr. Anderson.  Just one moment.

MS. BOZANIC:  Judge, I misspoke.  His sister would like to address the Court as well.  Ms. Kanema Morris.

THE COURT:  Of course, you can bring her forward.  She just needs to come to that microphone at the podium.  State her full name, spell her last named, and then she can say whatever she wishes the Court to hear.

Ma'am.

MS. MORRIS:  Good afternoon, Your Honor.  I'm Kanema Morris.  Thank you for allowing me to speak on my brother's behalf.  I want to say he's a blessing in my life and has played a major role in shaping me with so much love and support - not only in my life, but countless others.  And my daughter's life, especially.  Her father lives in another state, and he has stepped up to the plate every day and took that in consideration.  And I appreciate you so much, bro.

Sorry.  You know her situation.  You got the letter.

I want to say, Your Honor, you've got my mom's information. You see what my mom said in her letter. I want to ask you to please be lenient with my brother. He's grown so much and learned so much in the last few months. I've seen it. We've talked. He showed it. He has moved forward with so much integrity, and I just want you to please take that in consideration. And I thank you, Your Honor.

THE COURT: Thank you, ma'am. Thanks for coming in.

Is that it, Ms. Bozanic?

MS. BOZANIC: Yes, Your Honor.

THE COURT: Okay, just one moment.

Okay. The Court has considered the statements of all the parties, the presentence report, which contains the advisory guideline range, and all the statutory factors set forth in Title 18, United States Code, Section 3553(a). It is the finding of the Court that the defendant is not able to pay a fine, so no fine will be imposed.

On the 3553(a) factors, I want to make a bit of a record. Amongst the factors, first, the nature and severity of the offense. I largely agree with the Government. I want to make something very clear at the outset so that my sentencing variance will not be misunderstood in any way as to the legitimacy, sufficiency, or appropriateness of a criminal conviction in this case. There is no doubt that when I first saw this case, and I thought of when I sat in the chair

Mr. Jones and Mr. Anton now sit in, I thought to myself, you know, if there's only one or two of these, this is rarely criminal in the state, let alone for a federal wire fraud prosecution.  Obviously, the Government soon, with its proof, showed the Court and more importantly showed a jury who agreed unanimously that this is absolutely a criminal case.

It's a criminal case because of the serial nature of it, the length of time, and important evidence that rarely prevents -- presents itself that clearly shows exactly what Mr. Anton said.  Ms. Turner and Mr. Anderson -- and the part that Ms. Bozanic said a couple of times, this Court does not agree with.  He is not -- he is not a dumb man.  Far from it.  In this day in age, you can actually see much of his life.  He is a very smart man, and that's what makes the case so tragic.  This is a true "rags to riches" story.  This is somebody that came from very difficult places and made something of himself by his sheer talents.  But the nature and severity of this offense absolutely cries out for criminal prosecution, not just because there's four of them or more, not just because of the relevant conduct statute.  So that's that factor.

But for sentencing, and this is where what I said about 3553(a) really comes in.  And this is where under wire fraud, especially in the guidelines, the Honorable Jed Rakoff of the Southern District of New York for 20-plus years has it right.  He has it right in Adelson, he has it right in Gupta,

and he has it right about the loss table, and he has it right about 2B1.1.  That guideline simply cannot, despite the brilliance of the commission and the people who helped the commission, it cannot apprehend the kinds of frauds, the kinds of victims, the kinds of vendors, the differences between intended and actual loss that are part of the real world that the Bozanics and the Antons have to actually deal with in real cases, and that judges have to sentence individuals on real cases.

And that is why, even though it absolutely is a righteous prosecution in the jury in this Court's view, had more, way more overwhelming evidence to convict.  There's a difference between looking -- and I used to represent one, looking at a car dealer in the eye who spots an Escalade to a guy and looking at a Ponzi scheme victim, and looking at the victims that Sam Bankman-Fried took advantage of, and looking at the victim that Ms. Bozanic points out on the $100 million fraud.

There are levels of sophistication.  There are vendors in the Seybold building that let watches walk on people who are famous, and they do it for commercial reasons.  It doesn't mean they should become criminal victims, but it does mean, for sentencing, they should not all be treated the same.  I think that it is also indelible, it is just a fact of this case, and it would be a miscarriage of justice to treat the guideline

without considering that in rough numbers, the intended loss dwarfs the actual loss.

For all those reasons and more, I will vary.  And that's the main discount that I think my variance will reflect, which is what the Honorable Judge Rakoff would basically say, "The loss table overstates here."  Sixteen levels on a case like this, where sixteen levels looking in the whites of a person's eye who is unsophisticated and taking the same money gets treated the same, and that's not -- that's not justice, and I won't apply the guidelines here.

And that takes us to the second one, which will also be part of the variance in this case, and that's acceptance. And it's important.  A lot gets talked about amongst really smart lawyers, like the Antons and the Bozanics of the world, about the trial penalty.  This is a case where one needs to worry for 3553(a) purposes.  There's really good arguments because of cases like Tavberidze - also Judge Rakoff in the SDNY - that for guidelines purposes there are real concerns about the structure of 3E1.1, and the two points that come off if acceptance is found by me.  And then if acceptance is found by me, a further point, if the Government makes a motion, especially in a case such as this.

And I want to be clear, it's a 25 for purposes of guidelines.  But for 3553(a), I do find for 3553(a) that Mr. Anderson did nothing more than seek a trial.  That's all he

did.  He did not take the stand and lie within ten feet of me like his mother did.  Maybe, maybe in any system where mercy is part of sentencing, that could give an advantage for a smart man like Mr. Anderson to use a co- -- a co-defendant to do the dirty work.  You know, that's why it's a variance, that's why the points of acceptance being all three or none, they don't really fit human cases.  But in this Court's view, he did not take the stand and lie.  He did not have an excellent attorney stand before a Court and do anything that was absurd.  I think the defense was difficult, given the proof that the Government showed.  And the jury convicted quickly.  But his agent did not stand before a Court and do anything on his behalf other than make the Government prove it.

And the only thing on the law that I don't agree with Ms. Bozanic, and I think it's fair what she did, is that the case that she cited in her presentation, I don't think changed the law that much from what the law was.  I think Mr. Anton had the clear benefit of the law on matters of if it's paid back, what gets talked about in court.  This case was a little different.  We didn't talk about all of the civil litigation and all of what came back and what didn't came back, but what we did do is allow the reality of the evidence to show that with respect to a TV installer, when he was being crossed, it would not have been -- it would not have been within Mr. Anderson's constitutional rights to avoid cross-examination

that he's in the thick of it with him. And he got some of it back.

So, I don't think the law changed that much. I don't think it really changed her defense. I don't -- I still think that Mr. Anderson had the right to ask for the Government to prove it, and they did. He should not be penalized for 3553(a), and so I will vary on that second ground as well.

Finally, with respect to specific deterrence, general deterrence, respect for the law, respect for the law in this case, absolutely that piece justifies a variance as well. Respect for the law in this case needs to respect that one defendant obstructed justice; one defendant simply asked the Government to prove it.

Avoiding unwarranted sentencing disparities. Also, I completely agree with Ms. Bozanic on this, and it was part of my sentence with Ms. Turner, and it's part of my sentence here. It would be unjust, in this Court's view, to give the same sentence to Mr. Anderson given the fact that one basically has a five-point swing; one has no acceptance and two points for obstruction. He gets something to reflect, in addition to the loss discount, that there's nothing that he did to eliminate a reflection of acceptance of responsibility.

Finally, I note that in the guidelines themselves, and I've talked about the structure and how I think it's very unfair, and that's why I'm going to vary even though the

guidelines set a starting point.  In the determination under the guidelines, it says first that just because you go to trial, it does not preclude acceptance of responsibility.  It doesn't automatically preclude for guidelines purposes, but I'm not giving it here.  But what it actually says also is that things like voluntary payment of restitution prior to adjudication of guilt, that's a factor.  And there is no doubt that some of this was paid back before adjudication of guilt. Does that mean that he should not have a federal criminal conviction?  No, it does not.  He should.  But it absolutely should reflect the sentence.

For all those reasons, there's one last thing that I want to say, which is that the defense might take issue with a criminal history point here, intended loss there. The Government could take issue as well for variance.  I want to make very clear, I sat through all of this under United States versus Keen, if I didn't dot an "i," if I didn't get a decimal point right, given the advisory guideline range, given the discount that I am giving because of the loss table, and given that I am reflecting in 3553(a) a further variance for acceptance, after trial, after conviction, I would give the exact same sentence if for some reason the guidelines calculations were different.

If Mr. Anton -- and I don't think he was -- if he was somehow wrong, and that conviction should have been counted as

relevant conduct, and therefore he should have gotten a zero-point offender, I would not go that low.  There's a point in which where just like treating people on a grid can treat them too harshly, there comes a point where just the grid does not make sense.  That conviction in 2020 absolutely feeds in for 3553(a) purposes to what the Government is saying regardless of things like points for zero offender.

So under Keen, I want to be very clear, I will give the exact same sentence, even if there's a relevant conduct here or there's a criminal history point there.  I will give the exact same sentence.  And the big driver of that is that Ms. Turner and her 60 months should be materially different for the evidence and for her obstruction than her son.

Mr. Anderson, please rise to be sentenced.

It is the judgment of the Court that the defendant, Kisean Paul Anderson, is committed to the Bureau of Prisons to be imprisoned for 42 months as to each of Counts 1, 3, 4, 5, and 6 to be served concurrently.  It is further ordered that pursuant to Title 18, United States Code, Section 3664(d)(5), the victims' losses are not yet ascertainable, and the Court shall set a date for the final determination for restitution purposes of the victims' losses not to exceed 90 days after sentencing.

Once restitution is ordered by the Court, the defendant shall pay restitution jointly and severally with his

co-defendant, Janice Eleanor Turner, in the following manner. During any period of incarceration, payment shall be made as follows:  The defendant earns wages in a federal prison industry's UNICOR job, then the defendant must pay 50 percent of wages earned toward the financial obligations imposed by this judgment in a criminal case.  If the defendant does not work in a UNICOR job, then the defendant must pay a minimum of $25 per quarter toward the financial obligations imposed in this order.  Upon release from incarceration, the defendant shall pay restitution at the rate of 10 percent of monthly gross earnings, until such time as the Court may alter that payment schedule in the interest of justice.

The United States Bureau of Prisons, the United States Probation Office, and the United States Attorney's Office shall monitor the payment of restitution and report to the Court any material change in the defendant's ability to pay.  These payments do not preclude the Government and subsequently the probation office from using any other anticipated or unexpected financial gains, assets, or income of the Defendant to satisfy the restitution obligations.

Restitution shall be made payable to the clerk, United States Courts, and forwarded to the U.S. Clerk's Office financial section, 400 North Miami Avenue, Room 8N09, Miami, Florida 33128.  And restitution will be forwarded by the clerk to the victims.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years as to each of Counts 1, 3, 4, 5, and 6, all such terms to run concurrently.  Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district where released.  While on supervised release, the defendant shall comply with all the mandatory and standard conditions of supervision as referenced in the PSR.

The defendant shall also comply with the following special conditions:  Financial disclosure requirement, self-employment restriction, and unpaid restitution fines or special assessments as noted in the presentence report.

It is further ordered that the defendant shall pay immediately to the United States the mandatory special assessment of $100 as to each of Counts 1, 3, 4, 5, and 6 for a total of $500.  In sum and in total:  42 months' imprisonment, restitution to be determined, three years' supervised release, and a $500 special assessment.

Ms. Bozanic, now that sentence has been imposed, do you or the defendant object to the Court's findings of fact to the manner in which sentence was pronounced?

MS. BOZANIC:  Judge, we'll just renew all previous objections.

THE COURT:  They're preserved.

Mr. Anderson, sir, you have the right to appeal the conviction and sentence imposed. I notify you right now that any notice of appeal must be filed within 14 days after the entry of the judgment. If you're unable to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis, which simply means without payment of the cost.

Do you understand all that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you have any recommendations for the Bureau of Prisons that you wish?

MS. BOZANIC: Judge, I would ask for a recommendation as close as possible to the Southern District of Florida.

THE COURT: I will make that recommendation for a facility in the SDFL.

MS. BOZANIC: And, Judge, I would also ask for a recommendation of 500 RDAP.

THE COURT: RDAP program, I'll make the recommendation.

No objection to that, right?

MR. ANTON: Not if the Bureau of Prisons determines that it's appropriate.

THE COURT: Yeah, that's right, it's up to them, but I will make the recommendation in my judgment.

Anything else?

MS. BOZANIC: Judge, no other recommendations. I

wanted to ask as far as the self-employment restriction, would you make a note that he's able to do shows once he's on supervised release, obviously?

THE COURT:  No, he's going to have to take that up with me and the probation office, you know, when he gets out.

MS. BOZANIC:  Okay.

THE COURT:  But you've made this record.  And, you know, if I'm still here, and I certainly hope that I am, you know, gainful employment, and the ability to produce is something that every judge wants.  But I'm not going to make that determination right now.  It depends on his conduct; it depends where he is in his life.  But you have your record.

MS. BOZANIC:  Yes, Your Honor.

THE COURT:  Anything else?

MS. BOZANIC:  And the final thing, Your Honor, again, I would ask for Your Honor to consider allowing him to self-surrender in 90 days.  Again, he's had no violations while out on --

THE COURT:  Yeah, the Government moves for remand, right?

MR. ANTON:  Yes, Your Honor.

THE COURT:  Yeah, that's going to be granted.  This Court has been extremely solicitous in this regard.  I think it's fair to say that most judges after conviction would not have given Mr. Anderson the ability, the time to get his

affairs in order.  I think it's very important for the public and the victims in this case to know that there comes a point -- and at sentencing under federal statute, it would be a truly extraordinary case, and this is not one.  The burdens shifts, the incentives shift, impulses of desperation shift. The Government is right.  This is a mine-run case.  The defendant will be remanded to the marshals and Bureau of Prisons today.

Anything else that the Government wishes to do?

MR. ANTON:  No, Your Honor.  Thank you.

THE COURT:  Ms. Bozanic.

MS. BOZANIC:  Judge, would you let him surrender at FDC, like, as soon as possible so that he does not have to go to Broward jail?  I'm very concerned -- Your Honor, I know this --

THE COURT:  This happened once before, and there was no issue.  None.  And the same things were brought up before and there simply wasn't the issue.

And the Government's not modifying its motion, correct?

MR. ANTON:  No, Judge.  We ask that remand be executed.

MS. BOZANIC:  The last time -- if I just may remind the Court, the last time we were here on a Thursday and there was a run, so basically he was taken within an hour.  They took

him right away to FDC, that's why there was no issue.  He never went into Broward County jail.  I don't think Broward County jail is equipped to deal with his medical conditions.

THE COURT:  I don't agree with that.  In fact, I know that's not the case from my own personal experience.  Human beings are human beings.  We have excellent security officers that always treat people, you know, with regard to their health and their respect, and nobody's perfect, but I know that they treat people with those conditions.  And the motion is denied. He will be remanded today.

Now, with respect to the passport in light of his remand, the probation has his passport.  Any objection to giving it to Ms. Bozanic?  Is that what you wish to do?

THE PROBATION OFFICER:  That's fine, Your Honor.

MR. ANTON:  Yes, Judge.  No objection.

THE COURT:  Okay.  So at the conclusion after he's remanded, she'll make sure you get the passport, Ms. Bozanic.

MS. BOZANIC:  Thank you, Your Honor.

THE COURT:  Okay.

MS. BOZANIC:  And as far as the restitution hearing, it may be an agreement, I would like to waive his presence, so he doesn't have to be brought back over from -- to Broward County.

THE COURT:  You can put that in if we have the hearing that his presence is waived, and I will relax my normal -- he's

standing right here, and he's hearing that you are waiving his presence, so I don't have a problem with that.

MS. BOZANIC:  Judge, would you recommend -- and I know you don't control what the marshals do, but would you recommend that he be transported to FDC as soon as possible?

THE COURT:  I'm telling them that right now that within the -- with their very best efforts that they always give me -- I'd like him transported to FDC as soon as possible. If it cannot happen, I know it is not because they did not try. But I'm asking the security officers and the marshals to do their level best to make sure that he's transported to FDC Miami as soon as possible.  And they always do that in giving their best efforts whenever I ask.  I will do that -- I've done it right now.  I'm looking them right in the eye.

MS. BOZANIC:  Thank you, Your Honor.  Nothing further, Judge.

THE COURT:  That's all we have.  That's the sentence of the Court.  We are adjourned in this matter.

Mr. Anderson, best of luck to you, sir.

MR. ANTON:  We just need a restitution date, Judge.

THE COURT:  What's that?  Yes, you can go ahead and state it on the record.

THE DEPUTY CLERK:  October 16th.  Do you want to set it the same day as Ms. Turner?

THE COURT:  Yes.

October 16th will be restitution, Ms. Bozanic. October 16th.

MS. BOZANIC:  Judge, is that the same date as Ms. Turner?

THE COURT:  Yes, the same day.

MS. BOZANIC:  Okay.  Thank you, Your Honor.

THE COURT:  Thank you.

(Proceedings concluded at 2:39 p.m.)

C E R T I F I C A T E

I, Gina Rodriguez, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Florida, do hereby certify, pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter, and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

October 28, 2025          /s/ Gina Rodriguez
                          Gina Rodriguez, RPR, CRR, CRC
                          Federal Official Court Reporter
                          299 East Broward Boulevard
                          Fort Lauderdale, Florida 33301
                          gina_rodriguez@flsd.uscourts.gov

**MR. ANTON: [14]** 2/7 3/20 4/22 6/21 8/15 12/4 12/7 12/11 43/20 44/21 45/10 45/21 46/15 47/20
**MS. BOZANIC: [39]** 2/11 3/9 3/14 3/17 3/22 3/24 4/18 5/4 5/11 5/13 6/15 6/19 7/6 9/17 10/23 12/2 17/24 22/2 23/2 23/18 24/4 24/17 32/10 33/10 42/23 43/11 43/15 43/25 44/6 44/13 44/15 45/12 45/23 46/18 46/20 47/3 47/15 48/3 48/6
**MS. MORRIS: [1]** 32/17
**THE COURT: [58]**
**THE DEFENDANT: [2]** 31/24 43/8
**THE DEPUTY CLERK: [2]** 2/2 47/23
**THE PROBATION OFFICER: [1]** 46/14

**$**

**$100 [2]** 35/17 42/16
**$15,000 [1]** 23/22
**$170,000 [1]** 8/4
**$200 [1]** 19/8
**$25 [1]** 41/8
**$285,000 [1]** 22/7
**$30 [1]** 26/25
**$30 million [1]** 26/25
**$301,500 [1]** 13/7
**$356,000 [1]** 13/5
**$500 [2]** 42/17 42/19
**$700,000 [2]** 18/20 18/21
**$76,000 [1]** 22/5
**$900,000 [2]** 28/18 28/20

**'**

**'21 [1]** 21/7

**/**

**/s [1]** 48/20

**1**

**1.25 [1]** 25/22
**1.5 million [2]** 25/23 26/13
**10 [1]** 10/16
**10 percent [1]** 41/10
**135 [1]** 26/20
**14 days [1]** 43/3
**145 [1]** 2/23
**147 [1]** 2/23
**15 [2]** 1/5 28/5
**15 years [1]** 14/21
**150 [1]** 2/23
**159 [1]** 2/25
**16 [2]** 10/16 11/10
**16 years old [1]** 25/6
**16-year-old [2]** 18/10 19/13
**160 [1]** 2/24
**161 [1]** 2/24
**168 [1]** 26/8
**168-month [1]** 26/20
**16th [3]** 47/23 48/1 48/2
**17100 [1]** 1/17
**17th [1]** 30/21
**18 [2]** 33/15 40/19
**1:29 [2]** 1/5 2/1

**2**

**20-plus [1]** 34/24
**2015 [1]** 13/4

**2016 [2]** 13/7 13/8
**2020 [11]** 8/17 8/18 8/19 9/2 9/3 9/13 14/24 14/24 15/5 15/8 40/5
**2021 [3]** 7/22 8/20 13/12
**2023 [2]** 14/25 15/23
**2025 [3]** 1/5 29/2 48/20
**210 [1]** 26/8
**21st [1]** 15/8
**22 years [1]** 19/19
**22nd [1]** 29/2
**23rd [7]** 3/2 5/6 6/2 6/13 14/25 15/5 15/23
**24-CR-60126-LEIBOWITZ [1]** 1/2
**24-criminal-60126 [1]** 2/4
**25 [5]** 10/14 10/17 10/19 11/25 36/23
**28 [2]** 48/13 48/20
**299 [2]** 1/22 48/21
**2:39 [2]** 1/5 48/8
**2B1.1 [2]** 10/12 35/2

**3**

**3-point [1]** 25/21
**3.5 million [1]** 26/13
**33128 [1]** 41/24
**33301 [2]** 1/22 48/22
**33326 [1]** 1/17
**33394 [1]** 1/14
**35 years [3]** 12/20 17/25 18/9
**3553 [17]** 11/9 11/13 11/14 21/4 21/12 24/18 26/16 29/23 33/15 33/18 34/22 36/16 36/24 36/24 38/7 39/20 40/6
**3664 [1]** 40/19
**371 conspiracy [1]** 26/22
**38,500 [1]** 23/24
**3E1.1 [1]** 36/19
**3E1.1A [1]** 11/21

**4**

**400 [1]** 41/23
**41A1.2 [1]** 8/23
**42 months [1]** 40/17
**42 months' [1]** 42/17
**4A1.2 [1]** 7/13
**4th [1]** 8/20

**5**

**50 [2]** 4/4 4/9
**50 percent [1]** 41/4
**500 [2]** 1/13 43/16
**51 [3]** 4/11 4/13 4/15
**57 [3]** 10/21 11/25 12/13
**57 months [1]** 27/15

**6**

**60 [1]** 1/7
**60 months [8]** 12/14 26/10 26/15 26/21 27/6 27/7 27/13 40/12
**60126 [1]** 2/4
**62 [6]** 9/12 9/18 9/20 10/3 10/9 15/4
**63 [1]** 9/17
**66 [1]** 14/15
**68 [1]** 14/17

**7**

**7 plus [1]** 11/10
**700 [1]** 1/13
**71 months [3]** 10/21 11/25 12/13
**72 hours [1]** 42/4
**753 [1]** 48/13

**8**

**8N09 [1]** 41/23

**9**

**90 days [5]** 22/11 24/2 30/8 40/22 44/17

**A**

**ability [3]** 41/16 44/9 44/25
**able [4]** 21/19 30/24 33/16 44/2
**about [24]** 8/4 9/12 9/16 9/20 16/12 18/1 18/4 19/3 20/25 20/25 22/4 27/4 27/22 29/3 29/14 34/22 35/1 35/2 36/13 36/15 36/19 37/19 37/20 38/24
**above [1]** 48/15
**above-entitled [1]** 48/15
**absolutely [8]** 9/4 30/3 34/6 34/18 35/10 38/10 39/10 40/5
**absurd [1]** 37/9
**accept [1]** 32/7
**acceptance [16]** 10/23 10/25 11/2 11/11 11/13 28/25 29/9 29/23 36/12 36/20 36/20 37/6 38/19 38/22 39/3 39/21
**accepted [1]** 27/9
**accepting [1]** 27/8
**accident [3]** 16/10 18/11 18/15
**according [1]** 15/4
**accountant [1]** 28/3
**accountants [1]** 28/7
**accounts [2]** 20/8 28/8
**accustomed [1]** 12/21
**ACH [1]** 15/20
**across [1]** 11/23
**actions [2]** 25/10 31/25
**activity [1]** 16/9
**acts [1]** 18/9
**actual [7]** 6/11 20/22 21/1 22/6 22/7 35/6 36/2
**actually [14]** 10/6 13/20 20/12 22/14 22/25 23/3 25/2 25/4 25/24 26/19 27/25 34/13 35/7 39/5
**addenda [1]** 2/20
**addendum [1]** 6/25
**addicted [1]** 19/10
**addiction [3]** 16/13 19/11 21/11
**addition [1]** 38/20
**address [4]** 25/11 27/8 31/4 32/11
**adds [2]** 10/16 10/17
**Adelson [1]** 34/25
**adjourned [1]** 47/18
**adjudication [2]** 39/7 39/8
**adopt [2]** 5/6 5/18
**advantage [2]** 35/16 37/3
**advised [2]** 20/11 29/21
**advisory [3]** 10/20 33/14 39/18
**affairs [1]** 45/1
**affected [1]** 18/12
**afford [2]** 12/22 16/13
**after [15]** 7/14 13/7 18/15 20/6 20/7 24/23 25/25 29/16 30/18 39/21 39/21 40/22 43/3 44/24 46/16
**afternoon [7]** 2/7 2/9 2/10 2/11 2/14 2/15 32/17
**again [12]** 4/6 13/9 13/9 13/10 14/5 17/11 17/11 17/12 20/15 30/17 44/15 44/17
**against [2]** 10/7 31/15
**age [3]** 14/14 19/18 34/13

**A**

**agent [8]** 1/19 2/10 3/2 4/5 5/8 5/9 6/5 37/11

**Agent Cook [5]** 2/10 3/2 4/5 5/9 6/5

**ago [3]** 3/12 13/2 14/21

**agree [6]** 9/21 33/20 34/12 37/14 38/15 46/4

**agreed [2]** 15/8 34/5

**agreement [2]** 15/11 46/21

**ahead [1]** 47/21

**all [40]** 2/18 2/20 2/25 5/15 6/22 6/23 7/11 7/25 8/2 8/12 9/12 10/8 11/10 11/19 13/14 17/2 20/7 21/8 21/15 21/23 26/6 26/8 26/18 31/12 32/6 33/12 33/14 35/23 36/3 36/25 37/6 37/20 37/21 39/12 39/16 42/3 42/7 42/23 43/7 47/17

**allow [5]** 15/13 29/24 29/25 30/7 37/22

**allowing [2]** 32/18 44/16

**alone [1]** 34/3

**along [1]** 14/3

**already [3]** 13/12 21/3 27/9

**also [18]** 1/19 14/13 23/18 25/11 25/15 25/20 27/2 27/7 27/16 29/24 30/8 35/24 36/11 36/17 38/14 39/5 42/10 43/15

**alter [1]** 41/11

**Although [2]** 6/7 18/6

**always [4]** 25/7 46/7 47/7 47/12

**am [3]** 39/19 39/20 44/8

**AMANDA [1]** 1/19

**AMERICA [1]** 1/3

**amongst [2]** 33/19 36/13

**amount [10]** 5/16 5/19 5/25 7/20 8/21 9/7 10/15 20/24 26/4 29/5

**ANDERSON [44]** 1/6 2/3 2/12 2/14 3/10 7/2 7/7 7/11 10/17 11/2 17/25 18/5 18/8 18/23 19/3 21/10 21/13 22/14 23/4 23/4 24/18 25/9 26/15 27/1 27/7 27/17 27/19 28/12 29/7 29/17 31/4 31/7 31/19 32/9 34/10 36/25 37/4 38/5 38/18 40/14 40/16 43/1 44/25 47/19

**Anderson's [3]** 4/13 27/18 37/25

**Angeles [2]** 9/14 14/23

**announce [1]** 2/5

**another [2]** 3/11 32/22

**answer [1]** 15/18

**anticipated [1]** 41/18

**ANTON [8]** 1/12 2/7 8/14 17/20 34/1 34/10 37/17 39/24

**Antons [2]** 35/7 36/14

**any [29]** 4/25 6/6 10/22 12/1 12/3 12/5 12/6 12/10 13/20 16/11 17/22 18/17 19/1 19/7 19/9 21/18 22/4 27/17 27/17 30/5 31/9 33/22 37/2 41/2 41/15 41/18 43/3 43/9 46/12

**anybody [3]** 8/9 27/18 28/2

**anything [20]** 3/7 4/4 4/16 4/20 5/24 6/20 7/4 9/23 16/18 24/7 24/16 28/4 28/22 31/19 31/20 37/9 37/12 43/24 44/14 45/9

**anywhere [1]** 31/16

**apart [2]** 4/4 9/22

**apologize [2]** 31/25 31/25

**apology [2]** 32/7 32/7

**appeal [4]** 43/1 43/3 43/5 43/5

**appearances [3]** 1/11 2/5 31/12

**applicable [1]** 3/5

**applied [1]** 10/13

**applies [1]** 27/5

**apply [3]** 11/14 36/10 43/5

**appointment [1]** 30/24

**appointments [1]** 30/17

**appreciate [2]** 24/2 32/24

**apprehend [1]** 35/4

**approach [1]** 13/15

**appropriate [8]** 9/8 12/10 12/12 12/15 17/14 17/22 31/3 43/21

**appropriateness [1]** 33/23

**approximately [1]** 4/12

**are [27]** 6/17 7/3 11/12 15/24 16/4 20/22 22/23 23/9 23/11 23/15 23/24 24/8 24/13 25/1 25/20 26/24 26/25 28/15 35/6 35/19 35/19 35/20 36/18 40/20 46/6 47/1 47/18

**argued [2]** 29/11 29/12

**arguing [1]** 27/23

**argument [7]** 5/7 7/24 11/7 11/15 12/10 16/25 17/22

**arguments [2]** 5/18 36/16

**around [2]** 30/18 30/23

**arrest [1]** 9/24

**arrested [1]** 15/23

**as [82]**

**Asad [1]** 26/2

**ascertainable [1]** 40/20

**aside [1]** 23/19

**ask [24]** 5/7 6/22 10/23 11/1 12/9 17/14 17/21 19/8 19/8 20/17 27/9 28/7 28/9 29/24 30/7 31/2 33/2 38/5 43/11 43/15 44/1 44/16 45/21 47/13

**asked [3]** 15/3 27/14 38/12

**asking [5]** 12/13 21/4 32/1 32/6 47/10

**asks [1]** 26/15

**assessment [2]** 42/16 42/19

**assessments [1]** 42/13

**assets [1]** 41/19

**assume [1]** 3/15

**assured [1]** 11/8

**at [45]** 2/1 2/23 2/24 2/25 5/21 6/2 6/4 6/13 7/11 8/12 11/10 12/22 13/21 14/1 15/3 16/25 17/15 18/15 18/17 19/1 19/6 19/15 19/18 20/25 21/2 22/17 23/12 23/23 26/3 27/19 28/21 29/13 30/4 30/4 32/13 33/21 35/14 35/15 35/15 35/17 41/10 45/3 45/12 46/16 48/8

**attach [1]** 30/25

**attached [3]** 24/19 25/2 25/14

**attempt [2]** 14/1 16/16

**attempted [1]** 15/16

**attention [1]** 31/16

**attorney [5]** 2/20 2/22 8/6 21/22 37/8

**Attorney's [2]** 1/13 41/14

**attorneys [3]** 9/11 31/13 31/18

**August [1]** 1/5

**AUSA [2]** 1/12 1/12

**AUSAs [2]** 31/8 31/14

**automatically [1]** 39/4

**Avenue [1]** 41/23

**avoid [1]** 37/25

**Avoiding [1]** 38/14

**aware [2]** 5/14 26/2

**away [2]** 32/6 46/1

**B**

**back [16]** 10/8 14/21 17/9 17/10 25/6 28/14 28/17 28/23 29/6 29/16 37/18 37/21 37/21 38/2 39/8 46/22

**background [1]** 18/1

**bad [3]** 19/14 19/19 32/2

**balance [1]** 23/22

**bank [2]** 18/20 20/8

**banking [1]** 28/7

**Bankman [1]** 35/16

**Bankman-Fried [1]** 35/16

**base [1]** 10/15

**based [6]** 7/13 10/11 20/5 20/21 20/21 23/20

**basically [5]** 13/19 22/13 36/5 38/18 45/25

**basis [2]** 6/3 6/13

**battled [1]** 23/14

**be [62]**

**became [2]** 18/16 29/16

**because [35]** 8/9 9/11 10/6 10/15 11/5 11/11 11/14 12/16 14/18 16/6 16/25 17/1 17/4 17/11 18/3 22/7 22/15 22/22 24/7 25/5 26/3 26/21 27/24 27/25 28/19 29/9 29/9 29/10 34/7 34/19 34/19 36/17 39/2 39/19 47/9

**become [1]** 35/22

**becoming [1]** 20/16

**been [21]** 5/1 8/5 8/10 11/15 11/15 11/18 11/22 21/17 21/24 22/22 23/11 29/19 30/1 30/1 30/2 30/4 37/24 37/24 39/25 42/20 44/23

**before [16]** 1/9 6/23 23/13 25/8 29/10 29/17 30/9 30/22 30/22 31/7 31/21 37/9 37/12 39/8 45/16 45/17

**beginning [1]** 2/6

**behalf [7]** 2/8 2/12 8/9 12/11 31/21 32/19 37/12

**behavior [1]** 13/1

**being [7]** 9/23 13/9 16/11 17/18 21/10 37/6 37/23

**beings [2]** 46/6 46/6

**believe [7]** 7/6 7/13 24/5 24/8 24/10 28/11 30/24

**believing [1]** 13/19

**benefit [3]** 17/2 17/2 37/18

**benefited [3]** 16/24 17/7 17/8

**best [5]** 31/14 47/7 47/11 47/13 47/19

**better [2]** 30/14 30/14

**between [4]** 7/10 17/5 35/5 35/13

**big [2]** 20/4 40/11

**bit [2]** 27/15 33/18

**blacklisted [1]** 24/9

**blessing [1]** 32/19

**blows [1]** 31/15

**Bo [1]** 23/21

**boat [1]** 18/11

**boating [1]** 16/10

**bonds [1]** 20/12

**bone [1]** 32/2

**BOP [1]** 29/25

**borderline [1]** 19/15

**both [4]** 3/13 11/16 23/9 23/12

**bottom [1]** 19/6

**Boulevard [4]** 1/13 1/17 1/22 48/21

**bounced [1]** 13/23

**BOZANIC [31]** 1/16 1/16 2/12 2/15 2/17 3/3 3/6 4/11 4/16 5/2 6/6 6/10 8/13 10/10 10/22 11/8 11/17 17/21 24/3 24/16 31/6 33/9 34/11 35/17 37/15 38/15 42/20 45/11 46/13 46/17 48/1

**bozaniclaw.com [1]** 1/18

**B**

Bozanics [2]  35/7 36/14
breadwinner [1]  25/15
brief [1]  13/3
brilliance [1]  35/3
bring [1]  32/12
bro [1]  32/24
broadly [1]  9/25
broker [2]  22/8 22/19
brother [2]  19/18 33/3
brother's [1]  32/18
brought [3]  31/16 45/17 46/22
Broward [7]  1/13 1/22 45/14 46/2 46/2
 46/23 48/21
Broward County [3]  46/2 46/2 46/23
BSO [1]  30/10
building [1]  35/20
bully [2]  14/2 16/21
burden [1]  27/25
burdens [1]  45/4
Bureau [7]  30/14 40/16 41/13 42/5
 43/10 43/20 45/7
business [5]  15/10 18/15 18/16 19/9
 20/17
businesses [1]  20/23
but [61]
buy [1]  19/10

**C**

calculate [2]  6/24 10/11
calculated [1]  12/4
calculation [2]  6/11 10/22
calculations [1]  39/23
California [11]  7/7 8/1 8/6 8/17 8/18
 8/19 9/14 15/11 21/20 21/22 25/1
call [2]  4/3 22/15
called [2]  2/1 29/2
Calling [1]  2/2
calls [2]  7/1 15/18
came [5]  29/16 31/13 34/16 37/21 37/21
camp [2]  30/13 30/15
can [17]  3/13 4/6 11/8 12/23 18/11 23/3
 23/18 24/3 24/14 30/10 31/21 32/12
 32/14 34/13 40/3 46/24 47/21
can't [2]  8/1 19/2
cannot [5]  16/13 21/18 35/2 35/4 47/9
car [1]  35/14
care [2]  30/11 30/14
career [1]  32/4
cars [4]  12/23 13/16 20/9 20/9
case [64]
cases [8]  25/21 25/24 26/17 26/24 35/8
 35/9 36/17 37/7
category [9]  7/1 7/2 7/4 7/10 8/12 9/6
 10/19 10/20 27/2
Category I [2]  7/2 7/10
celebrity [3]  12/21 13/1 13/18
cent [3]  8/7 21/20 23/13
certain [4]  14/15 18/4 18/13 30/10
certainly [3]  12/22 31/10 44/8
certify [1]  48/12
chair [1]  33/25
chance [1]  30/14
change [1]  41/16
changed [3]  37/16 38/3 38/4
character [4]  2/25 3/9 3/11 16/15
characteristics [1]  12/18
charges [1]  25/8

charity [2]  24/19 25/4
checks [1]  13/23
child [1]  12/19
Christmas [1]  24/25
cigar [1]  23/15
circle [1]  19/12
Circuit [1]  26/2
circuits [1]  11/23
circumstances [1]  27/19
cited [1]  37/16
civil [5]  13/4 14/11 14/22 17/10 37/20
claim [1]  14/2
claimed [1]  15/21
clarify [1]  24/5
clarifying [1]  24/2
clean [1]  4/3
cleaned [1]  10/6
clear [10]  6/9 9/20 23/15 29/8 29/16
 33/21 36/23 37/18 39/16 40/8
clearly [6]  8/23 12/20 12/25 17/4 23/11
 34/9
clerk [2]  41/21 41/25
Clerk's [1]  41/22
client [1]  26/12
close [4]  31/13 31/16 31/17 43/12
clue [6]  19/3 19/7 23/5 27/22 28/4 28/9
co [4]  26/20 37/4 37/4 41/1
co-defendant [3]  26/20 37/4 41/1
Coates [1]  23/21
Code [3]  33/15 40/19 48/13
come [4]  18/21 20/16 32/13 36/19
comes [3]  34/22 40/4 45/2
comfortable [1]  31/22
coming [3]  19/7 20/20 33/8
commend [2]  31/8 31/17
commended [1]  10/5
commensurate [1]  12/15
commercial [1]  35/21
commission [2]  35/3 35/4
commit [3]  16/23 17/12 17/17
committed [2]  18/6 40/16
committing [1]  16/3
common [1]  7/17
compare [2]  25/24 26/12
comparing [1]  27/2
compass [1]  16/17
complaint [1]  15/6
completely [1]  38/15
complied [1]  30/3
comply [2]  42/7 42/10
comprised [1]  8/20
computation [1]  8/16
concerned [1]  45/14
concerns [1]  36/18
concert [2]  20/20 28/21
concerts [1]  21/9
concluded [1]  48/8
conclusion [1]  46/16
concurrently [2]  40/18 42/4
conditions [6]  16/12 30/10 42/8 42/11
 46/3 46/9
conduct [34]  7/7 7/8 7/14 7/16 7/19
 7/22 7/23 7/23 7/25 8/2 8/16 8/20 8/21
 8/24 9/6 9/22 9/23 10/2 13/13 13/14
 14/11 14/12 14/13 14/16 14/17 14/19
 14/25 15/1 22/25 31/18 34/20 40/1 40/9
 44/11
Conference [1]  48/17

conformance [1]  48/16
conman [1]  16/19
consider [8]  11/2 21/5 23/10 26/14
 27/10 27/21 29/1 44/16
consideration [4]  14/16 14/18 32/24
 33/7
considered [4]  9/6 9/23 26/16 33/12
considering [1]  36/1
conspiracy [1]  26/22
constitutional [1]  37/25
construed [1]  9/25
contacting [1]  14/7
contacts [1]  16/4
contained [1]  15/20
contains [1]  33/13
contest [2]  23/1 23/2
contested [1]  24/14
continue [1]  24/3
continued [4]  14/22 17/7 17/11 21/10
continues [2]  13/2 17/17
continuing [1]  16/23
control [2]  30/12 47/4
conversation [1]  23/20
conversations [1]  20/5
convict [1]  35/12
convicted [7]  14/14 14/23 15/2 15/25
 16/1 29/5 37/11
conviction [16]  8/1 8/17 8/18 9/2 9/3
 9/24 14/24 16/22 20/6 33/24 39/10
 39/21 39/25 40/5 43/2 44/24
convinced [1]  15/13
COOK [7]  1/19 2/10 3/2 4/5 5/9 6/5 6/7
copy [1]  3/22
correct [4]  6/18 9/12 45/20 48/14
correspondence [1]  15/20
cost [2]  43/4 43/6
could [11]  12/22 15/12 16/7 20/12
 20/21 22/6 26/9 27/25 28/1 37/3 39/15
couldn't [1]  28/22
counsel [2]  2/5 8/15
count [3]  7/25 8/1 8/3
counted [4]  7/9 7/18 7/21 39/25
counting [5]  7/10 7/25 8/2 8/22 22/20
countless [1]  32/21
country [1]  11/23
counts [5]  7/23 10/9 40/17 42/3 42/16
Counts 1 [2]  42/3 42/16
County [3]  46/2 46/2 46/23
couple [1]  34/11
course [5]  2/18 3/1 5/23 7/16 32/12
court [44]  1/1 1/21 2/1 3/11 4/4 4/9 4/11
 4/15 5/13 5/14 5/22 10/8 11/2 15/2
 15/25 21/16 23/10 26/1 27/17 27/21
 28/20 29/13 31/5 32/7 32/11 32/15
 33/12 33/16 34/5 34/11 37/9 37/12
 37/19 40/15 40/20 40/24 41/11 41/15
 44/23 45/24 47/18 48/10 48/11 48/21
Court's [7]  5/4 10/2 31/16 35/11 37/7
 38/17 42/21
Courtney [1]  30/19
Courts [1]  41/22
COVID [1]  21/7
CR [1]  1/2
CRC [2]  1/21 48/20
create [1]  28/6
credibility [1]  6/5
cries [1]  34/18
crime [2]  18/7 18/8

**C**

crimes [3] 16/23 16/24 17/17
criminal [20] 2/4 7/1 7/4 8/12 9/5 10/18
 10/18 10/20 14/19 16/9 33/23 34/3 34/6
 34/7 34/18 35/22 39/9 39/14 40/10 41/6
Criminal History Category I [1] 10/20
cross [2] 5/8 37/25
cross-examination [1] 37/25
cross-examine [1] 5/8
crossed [1] 37/23
CRR [2] 1/21 48/20
current [1] 16/23
currently [1] 9/4
custody [3] 17/16 30/15 42/4

**D**

date [4] 22/12 40/21 47/20 48/3
dates [2] 7/20 8/3
daughter's [1] 32/22
DAVID [1] 1/9
day [7] 11/19 15/9 19/4 32/23 34/13
 47/24 48/5
days [7] 14/4 22/11 24/2 30/8 40/22
 43/3 44/17
deal [4] 9/11 28/7 35/7 46/3
dealer [1] 35/14
dealing [2] 8/18 16/6
deals [1] 26/9
decide [1] 29/22
decided [5] 26/22 29/2 29/11 29/18
 29/19
decimal [1] 39/18
deem [1] 11/6
deep [1] 28/11
defendant [49]
defendant had [1] 15/7
defendant's [7] 7/14 12/18 14/19 15/10
 15/17 15/19 41/16
defense [11] 2/24 8/15 29/10 29/15
 29/17 29/20 29/20 31/13 37/10 38/4
 39/13
define [2] 12/24 25/8
definitely [2] 32/1 32/3
defraud [1] 13/1
delay [1] 28/11
delayed [1] 28/14
denied [1] 46/9
Department [2] 9/14 26/5
departure [2] 27/15 30/25
depending [1] 3/4
depends [2] 44/11 44/12
deserves [1] 26/15
deserving [2] 29/8 29/23
designated [1] 30/11
desperation [1] 45/5
despite [3] 15/11 17/17 35/2
detail [1] 14/15
details [2] 18/4 25/13
detention [4] 21/17 27/14 27/16 30/2
determination [3] 39/1 40/21 44/11
determined [3] 12/12 22/22 42/18
determines [1] 43/20
deterrence [3] 27/12 38/8 38/9
deterrent [1] 16/4
did [31] 3/9 3/11 4/5 10/6 10/25 10/25
 15/18 16/7 21/12 21/20 21/22 22/3
 25/13 28/8 28/12 28/16 30/9 30/18
 30/25 36/25 37/1 37/1 37/2 37/7 37/8

37/11 37/15 37/22 38/6 38/21 47/9
didn't [13] 14/1 14/21 16/23 24/7 27/24
 27/24 27/25 29/18 30/18 37/20 37/21
 39/17 39/17
difference [3] 7/10 8/12 35/13
differences [1] 35/5
different [6] 7/20 26/6 27/18 37/20
 39/23 40/12
differently [1] 18/5
difficult [3] 19/22 34/16 37/10
dirty [1] 37/5
disagreement [1] 21/25
disagreements [1] 22/13
disclosure [1] 42/11
discount [3] 36/4 38/21 39/19
discussed [2] 11/22 30/9
discussed by [1] 11/22
discusses [1] 15/4
disparities [1] 38/14
disproportionate [2] 20/22 21/2
disputes [1] 23/25
disqualify [1] 8/10
district [8] 1/1 1/1 1/10 34/24 42/6
 43/12 48/11 48/12
districts [1] 11/23
do [45] 4/25 5/16 5/17 5/22 6/23 8/5
 8/25 8/25 16/9 16/10 16/11 18/24 20/19
 20/19 21/18 21/19 21/22 22/10 22/21
 24/20 27/20 28/4 28/8 28/22 31/21
 31/22 35/21 36/24 37/4 37/9 37/12
 37/22 41/17 42/20 43/7 43/9 44/2 45/9
 46/13 47/4 47/10 47/12 47/13 47/23
 48/12
docket [4] 2/23 2/24 4/7 21/23
docketed [2] 2/24 2/25
doctor [2] 18/12 30/19
document [2] 4/1 28/4
documents [2] 8/5 8/6
does [18] 3/18 16/14 24/25 25/3 25/4
 25/7 28/5 30/9 30/17 30/19 34/11 35/22
 39/3 39/9 39/10 40/4 41/6 45/13
doesn't [11] 8/11 12/25 19/4 27/21 28/6
 28/6 28/7 30/12 35/21 39/4 46/22
doing [6] 6/3 15/17 18/13 24/19 24/22
 31/22
dollars [3] 20/7 26/5 26/11
Dominguez [5] 5/18 6/9 6/14 23/6 31/8
Dominguez's [1] 5/7
don't [30] 5/9 5/13 19/1 19/6 22/6 22/9
 23/1 23/2 23/7 24/11 25/8 26/14 27/1
 27/6 27/12 29/19 30/10 31/19 31/20
 37/6 37/14 37/16 38/3 38/3 38/4 39/24
 46/2 46/4 47/2 47/4
done [7] 10/12 24/21 24/21 24/23 25/10
 32/6 47/14
dot [1] 39/17
double [3] 8/1 8/22 22/20
double-counting [1] 8/22
doubt [2] 33/24 39/7
down [4] 3/21 13/17 21/8 28/11
Downtown [1] 24/25
downward [5] 18/2 25/14 30/25 30/25
 31/3
Dr. [1] 30/19
Dr. Courtney [1] 30/19
drew [1] 10/8
driver [1] 40/11
due [4] 13/20 13/21 14/14 30/8

Dukens [2] 26/18 26/25
dumb [1] 34/12
During [1] 41/2
dwarfs [1] 36/2

**E**

each [5] 13/15 31/15 40/17 42/3 42/16
early [1] 13/4
earned [1] 41/5
earnings [1] 41/11
earns [1] 41/3
East [3] 1/13 1/22 48/21
easy [1] 20/16
efforts [2] 47/7 47/13
either [5] 2/22 16/4 16/7 22/14 24/1
EKG [1] 30/20
Eleanor [1] 41/1
Eleazard [2] 26/19 26/25
electronic [1] 15/20
electronics [3] 12/23 13/16 13/25
Eleventh [1] 26/2
eliminate [1] 38/21
ELIZABETH [1] 1/19
else [10] 3/7 4/16 6/10 6/20 22/19 24/16
 27/18 43/24 44/14 45/9
email [1] 4/6
employment [3] 42/12 44/1 44/9
empty [1] 20/7
Encino, [1] 15/11
Encino, California [1] 15/11
end [5] 12/24 13/16 13/25 14/21 17/15
enforcement [1] 15/5
Engagement [1] 15/6
enhancement [1] 10/17
enter [1] 29/4
entitled [2] 6/7 48/15
Entries [2] 2/23 2/24
Entries 160 [1] 2/24
entrust [1] 13/19
entry [2] 2/25 43/4
Entry 159 [1] 2/25
equally [1] 3/4
equals [1] 10/17
equipped [1] 46/3
Escalade [1] 35/14
especially [3] 32/22 34/23 36/22
ESQUIRE [1] 1/16
essentially [2] 14/10 14/18
even [8] 10/24 16/22 17/18 18/8 29/5
 35/10 38/25 40/9
eventually [2] 17/9 21/6
ever [1] 31/16
every [7] 8/7 21/19 23/13 24/25 24/25
 32/23 44/10
everybody [2] 28/16 30/21
everybody's [1] 5/14
everything [7] 3/6 10/12 18/14 21/8
 23/14 30/4 32/4
evidence [10] 5/15 6/4 9/1 9/25 18/19
 18/22 34/8 35/12 37/22 40/13
exact [5] 16/3 17/18 39/22 40/9 40/11
exactly [1] 34/9
examination [2] 6/7 37/25
examine [1] 5/8
example [3] 22/2 26/18 31/14
exceed [1] 40/22
excellent [3] 9/11 37/8 46/6
excluded [1] 9/5

## E

excuse [2] 18/11 18/13
excuses [1] 20/2
executed [2] 14/8 45/22
Exhibit [4] 4/4 4/9 4/11 4/15
Exhibit 50 [1] 4/4
Exhibit 51 [1] 4/11
exhibits [1] 24/19
experience [1] 46/5
experienced [1] 31/13
extraordinary [1] 45/4
extremely [1] 44/23
eye [3] 35/14 36/8 47/14

## F

face [1] 22/17
facility [1] 43/14
fact [6] 17/3 17/9 35/24 38/18 42/21 46/4
factor [4] 21/4 29/23 34/20 39/7
factors [6] 21/12 24/18 26/16 33/14 33/18 33/19
facts [1] 15/24
failing [4] 13/5 13/7 13/10 16/6
fair [4] 27/6 31/15 37/15 44/24
faith [1] 13/18
fake [3] 13/21 16/20 17/6
fall [1] 19/12
false [1] 29/4
fame [1] 19/13
familiar [1] 18/19
family [2] 25/18 32/2
famous [3] 20/16 27/20 35/21
Fancy [1] 12/23
far [7] 4/4 5/19 7/18 24/18 34/12 44/1 46/20
father [2] 25/12 32/22
fault [1] 14/2
favorable [1] 9/25
FDC [5] 45/13 46/1 47/5 47/8 47/12
FDC Miami [1] 47/12
fed [1] 24/24
federal [9] 1/21 15/2 15/25 34/3 39/9 41/3 45/3 48/10 48/21
feeding [1] 24/20
feeds [1] 40/5
feel [2] 20/1 32/5
feels [2] 12/14 31/3
feet [1] 37/1
felony [1] 16/22
felt [1] 20/3
few [2] 3/12 33/4
fight [1] 9/20
figure [1] 25/12
filed [3] 18/2 18/2 43/3
final [6] 2/19 9/20 10/13 13/20 40/21 44/15
Finally [2] 38/8 38/23
finances [3] 19/4 19/5 27/22
financial [5] 41/5 41/8 41/19 41/23 42/11
find [2] 10/12 36/24
finding [3] 11/14 11/24 33/16
findings [6] 3/3 5/25 6/5 8/22 13/12 42/21
finds [1] 10/9
fine [4] 23/7 33/17 33/17 46/14
fines [1] 42/12

first [5] 4/1 30/24 33/19 33/24 39/2
fit [1] 37/7
five [6] 12/14 17/13 26/7 26/23 27/1 38/19
five years [3] 12/14 26/23 27/1
five-point [1] 38/19
five-year [2] 17/13 26/7
flash [1] 19/23
flashing [1] 20/4
FLORIDA [9] 1/1 1/4 1/14 1/17 1/22 41/24 43/12 48/12 48/22
flows [2] 22/16 22/23
flsd.uscourts.gov [2] 1/23 48/22
follow [3] 4/7 15/16 19/25
following [2] 41/1 42/10
follows [1] 41/3
forced [1] 16/21
foregoing [1] 48/13
forfeited [1] 26/9
forgot [1] 22/6
forma [1] 43/5
format [1] 48/16
Fort [4] 1/4 1/14 1/22 48/22
forth [1] 33/15
forward [3] 8/20 32/12 33/5
forwarded [2] 41/22 41/24
found [7] 9/8 18/7 25/1 26/3 27/5 36/20 36/20
four [3] 25/12 31/18 34/19
four-year-old [1] 25/12
frankly [1] 23/5
fraud [6] 17/12 26/10 29/5 34/3 34/23 35/18
frauds [1] 35/4
fraudulent [1] 15/22
Fried [1] 35/16
friends [1] 25/19
front [1] 18/4
full [2] 16/19 32/14
fully [1] 8/5
further [6] 6/6 36/21 39/20 40/18 42/14 47/15

## G

gainful [1] 44/9
gains [1] 41/19
gander [1] 9/21
gave [1] 31/14
general [1] 38/8
gentleman [1] 24/9
Gentlemen [1] 2/9
get [17] 3/9 3/11 10/14 11/13 11/17 14/6 17/1 19/20 28/3 28/6 28/10 30/11 30/18 30/20 39/18 44/25 46/17
gets [8] 7/7 9/15 27/7 36/9 36/13 37/19 38/20 44/5
getting [2] 30/15 31/16
gina [6] 1/21 1/23 48/10 48/20 48/22
give [10] 6/8 11/20 22/2 22/12 37/3 38/17 39/21 40/8 40/10 47/8
given [6] 37/10 38/18 39/18 39/19 39/20 44/25
gives [2] 25/4 25/6
giving [6] 11/2 22/10 39/5 39/19 46/13 47/13
glass [1] 23/16
go [12] 14/15 23/5 23/21 25/13 26/18

29/18 29/21 30/20 39/2 40/2 45/13 47/21
go karts [1] 23/21
goes [4] 18/21 25/4 30/13 31/11
going [18] 5/7 5/18 11/6 18/3 19/4 20/2 20/8 20/25 23/16 25/13 26/18 27/4 27/17 32/5 38/25 44/4 44/10 44/22
gone [1] 24/24
good [11] 2/7 2/9 2/10 2/11 2/14 2/15 13/18 18/17 25/7 32/17 36/16
goose [1] 9/21
goose/gander [1] 9/21
got [13] 18/25 19/22 21/6 25/25 26/6 26/7 26/20 28/2 28/20 29/14 32/25 33/1 38/1
gotten [2] 31/17 40/1
GOVERNMENT [43] 1/12 2/6 2/21 2/21 3/18 4/20 5/24 6/4 6/20 7/18 8/8 9/7 9/21 10/1 10/5 11/6 12/3 12/9 12/11 12/13 18/6 21/14 22/4 24/6 26/5 26/8 26/15 26/22 28/13 29/13 33/20 34/4 36/21 37/10 37/13 38/5 38/13 39/15 40/6 41/17 44/19 45/6 45/9
Government's [2] 13/14 45/19
grand [2] 9/13 14/23
granted [1] 44/22
Great [1] 3/25
greater [1] 6/12
grew [1] 19/21
grid [2] 40/3 40/4
gross [1] 41/11
ground [1] 38/7
grown [1] 33/3
guess [4] 5/6 20/18 24/10 25/22
guidance [1] 19/14
guide [1] 19/16
guideline [15] 10/9 10/11 10/13 10/14 10/20 11/4 11/5 11/10 11/15 12/12 26/21 33/14 35/2 35/25 39/18
guidelines [19] 6/1 6/2 6/12 6/16 10/1 11/7 11/24 12/4 25/24 26/7 34/23 36/10 36/18 36/24 38/23 39/1 39/2 39/4 39/22
guilt [2] 39/7 39/8
guilty [2] 18/7 18/8
Gupta [1] 34/25
guy [1] 35/15
guys [2] 15/6 25/3

## H

had [33] 8/6 8/24 8/25 11/15 11/18 11/19 11/22 14/5 14/7 15/7 15/7 18/15 18/17 19/3 19/7 19/14 19/16 19/16 19/16 23/5 23/5 27/22 28/1 29/10 29/18 29/20 30/1 30/3 30/5 35/11 37/17 38/5 44/17
half [1] 4/12
half-page [1] 4/12
hand [2] 3/10 3/21
handed [1] 4/10
handful [1] 14/9
happen [2] 18/5 47/9
happened [5] 19/20 21/7 26/19 28/19 45/16
happening [2] 19/7 21/8
hard [2] 21/17 31/14
harshly [1] 40/4
has [47] 4/7 5/1 7/20 7/21 9/8 10/18 11/15 11/17 12/12 13/9 13/12 16/9

## H

**has...** [35] 16/10 16/10 18/15 19/5 19/11 21/14 21/17 21/24 22/22 23/11 23/21 23/22 24/23 24/24 25/19 27/20 28/3 28/9 30/1 30/10 32/1 32/19 32/23 33/5 33/12 34/24 34/25 34/25 35/1 35/1 38/18 38/19 42/20 44/23 46/12
**hasn't** [1] 30/5
**hatched** [1] 17/3
**have** [55]
**haven't** [1] 4/21
**having** [6] 18/10 20/7 20/16 20/17 23/9 23/20
**he** [148]
**he's** [27] 12/20 18/9 21/19 23/16 24/21 25/3 25/10 25/10 28/5 29/8 29/23 30/1 30/1 30/3 30/3 30/4 32/19 33/3 38/1 44/2 44/2 44/4 44/17 46/16 46/25 47/1 47/11
**He's had** [1] 30/3
**health** [2] 16/11 46/7
**hear** [4] 5/23 22/21 29/22 32/15
**heard** [2] 12/5 18/22
**hearing** [11] 1/9 3/1 6/2 6/4 21/1 22/11 24/2 24/15 46/20 46/24 47/1
**heart** [2] 25/7 30/10
**held** [1] 48/15
**help** [2] 16/22 25/7
**helped** [2] 25/19 35/3
**her** [15] 6/8 11/17 17/2 20/18 32/12 32/13 32/14 32/22 32/25 33/2 37/16 38/4 40/12 40/13 40/13
**here** [21] 2/16 5/15 5/17 8/6 9/22 11/12 15/2 15/25 23/16 23/24 26/12 31/12 36/6 36/10 38/16 39/5 39/14 40/10 44/8 45/24 47/1
**hereby** [1] 48/12
**high** [3] 12/24 13/16 13/25
**high-end** [3] 12/24 13/16 13/25
**him** [35] 8/10 15/13 16/23 17/16 18/1 18/10 18/12 18/13 19/13 19/16 20/2 20/10 20/11 21/14 24/19 25/1 25/15 25/18 27/3 27/13 27/19 28/4 28/7 29/22 29/24 29/25 29/25 30/7 30/11 30/19 38/1 44/16 45/12 46/1 47/8
**himself** [3] 19/20 25/3 34/16
**his** [79]
**history** [11] 7/1 7/4 8/12 9/5 10/18 10/18 10/20 12/18 13/9 39/14 40/10
**hit** [1] 19/5
**home** [6] 15/10 21/17 27/14 27/16 30/1 30/4
**homeless** [4] 19/15 19/15 24/20 24/24
**Honor** [61]
**Honor's** [2] 14/16 14/18
**HONORABLE** [3] 1/9 34/23 36/5
**hope** [1] 44/8
**hour** [1] 45/25
**hours** [1] 42/4
**houses** [2] 12/23 20/9
**how** [5] 4/5 20/10 21/6 28/4 38/24
**however** [2] 11/7 15/21
**human** [3] 37/7 46/5 46/6
**hundred** [1] 26/4
**hundred-something** [1] 26/4

## I

**I do** [1] 8/5

**I know** [1] 31/11
**I want** [1] 33/1
**I'd** [4] 12/9 17/14 17/21 47/8
**I'll** [8] 3/15 4/24 5/23 8/3 20/19 20/19 22/2 43/17
**I'm** [32] 5/7 5/17 5/24 6/3 9/2 11/6 11/14 18/3 18/12 20/2 20/24 21/4 25/13 26/2 26/9 26/17 26/19 27/4 31/11 32/1 32/2 32/6 32/6 32/17 38/25 39/4 44/8 44/10 45/14 47/6 47/10 47/14
**I've** [19] 2/17 2/17 2/18 2/19 2/20 2/23 2/25 3/6 4/10 11/24 15/3 23/22 25/1 26/17 31/25 32/5 33/4 38/24 47/14
**identical** [3] 15/1 15/2 15/24
**identification** [2] 4/9 4/15
**if** [36] 5/24 6/9 7/6 7/24 8/2 13/23 14/1 21/23 22/25 24/12 24/14 27/19 28/4 28/7 29/5 29/24 31/19 31/20 34/2 36/20 36/20 36/21 37/18 39/17 39/17 39/22 39/24 39/24 40/9 41/6 43/4 43/20 44/8 45/23 46/24 47/9
**image** [1] 12/24
**immaterial** [1] 17/11
**immediately** [1] 42/15
**important** [7] 16/25 20/1 22/21 31/9 34/8 36/13 45/1
**importantly** [2] 14/23 34/5
**impose** [1] 17/15
**imposed** [8] 7/14 27/12 31/21 33/17 41/5 41/8 42/20 43/2
**imposition** [1] 17/16
**imprisoned** [1] 40/17
**imprisonment** [2] 42/1 42/17
**impulses** [1] 45/5
**in** [188]
**in fact** [2] 17/3 46/4
**Inc** [3] 22/3 22/5 23/15
**incarceration** [2] 41/2 41/9
**incentives** [1] 45/5
**income** [2] 24/11 41/19
**indelible** [1] 35/24
**indicates** [1] 8/19
**indictment** [4] 2/17 7/19 7/20 8/3
**individual** [1] 18/10
**individuals** [2] 13/15 35/8
**induces** [1] 29/3
**industry** [4] 19/22 19/23 19/23 19/25
**industry's** [1] 41/4
**info** [1] 1/18
**information** [4] 15/21 18/1 22/4 33/1
**initial** [1] 10/24
**initials** [1] 4/8
**installer** [1] 37/23
**instant** [8] 7/15 7/16 8/24 8/25 9/1 12/15 14/22 16/1
**instead** [2] 12/25 16/14
**integrity** [2] 16/16 33/6
**intend** [4] 5/25 23/1 23/2 28/12
**intended** [8] 6/11 7/24 20/21 21/2 25/22 35/6 36/1 39/14
**intends** [2] 5/22 21/19
**intent** [2] 28/10 28/11
**interest** [2] 8/9 41/12
**interesting** [4] 11/12 11/18 11/22 26/3
**Internet** [1] 13/3
**interpretation** [1] 10/1
**interrupted** [2] 23/8 24/3
**interview** [1] 28/8

**into** [8] 14/15 19/12 19/22 25/13 29/4 30/13 30/15 46/2
**invest** [2] 20/10 20/11
**investigation** [1] 15/5
**involved** [1] 26/6
**is** [157]
**isn't** [1] 14/11
**Issa** [1] 26/2
**issue** [6] 23/20 39/13 39/15 45/17 45/18 46/1
**issues** [3] 7/3 30/5 30/8
**it** [142]
**it's** [42] 4/4 6/10 8/4 8/10 8/18 8/20 9/2 9/6 9/8 10/15 11/11 11/25 14/12 14/13 19/12 19/22 19/23 19/24 21/2 22/21 27/6 27/13 27/15 27/25 28/9 28/14 28/15 29/2 30/2 31/9 34/7 36/13 36/23 37/5 37/15 37/18 38/16 38/24 43/21 43/22 44/24 45/1
**items** [7] 12/24 13/17 15/19 16/7 16/13 24/13 29/15
**its** [2] 34/4 45/19
**itself** [2] 2/22 34/9

## J

**jail** [3] 45/14 46/2 46/3
**Jamaica** [1] 24/24
**Janice** [2] 16/25 41/1
**Jed** [1] 34/23
**Jed Rakoff** [1] 34/23
**jeweler** [3] 15/6 22/5 22/25
**jewelries** [1] 13/16
**jewelry** [16] 12/23 13/8 13/10 13/22 13/24 15/7 15/9 15/10 15/12 15/14 15/15 16/6 19/12 19/23 20/4 21/11
**job** [2] 41/4 41/7
**jointly** [1] 40/25
**JONES** [3] 1/12 2/8 34/1
**JR** [1] 4/8
**judge** [40] 1/10 3/9 5/4 8/4 8/10 8/15 9/17 10/23 12/11 14/11 16/9 16/18 17/13 17/25 18/8 18/13 21/12 22/2 23/2 24/4 24/17 25/20 27/24 28/25 29/24 32/10 36/5 36/17 42/23 43/11 43/15 43/25 44/10 45/12 45/21 46/15 47/3 47/16 47/20 48/3
**Judge Rakoff** [2] 36/5 36/17
**judges** [3] 11/23 35/8 44/24
**judgment** [4] 40/15 41/6 43/4 43/23
**Judicial** [1] 48/17
**July** [4] 3/2 4/5 5/6 6/2
**July 23rd** [3] 3/2 5/6 6/2
**jury** [4] 18/7 34/5 35/11 37/11
**just** [50]
**justice** [5] 26/6 35/25 36/9 38/12 41/12
**justified** [1] 17/14
**justifies** [1] 38/10

## K

**Kanema** [2] 32/11 32/17
**karts** [1] 23/21
**Keen** [2] 39/17 40/8
**keeping** [1] 4/3
**keeps** [2] 18/23 18/23
**kind** [1] 26/12
**kinds** [3] 35/4 35/4 35/5
**KISEAN** [4] 1/6 2/3 2/12 40/16
**know** [46] 3/2 3/15 5/20 7/18 14/8 18/10

**K**

**know... [40]** 18/25 19/4 19/11 20/8 20/16 21/14 22/6 23/7 24/18 25/9 25/11 25/21 27/3 27/3 27/20 27/21 28/13 28/20 29/1 29/11 29/23 30/12 31/11 32/2 32/2 32/3 32/4 32/25 34/2 37/5 44/5 44/8 44/9 45/2 45/14 46/4 46/7 46/8 47/3 47/9
**knowledge [1]** 16/19
**known [3]** 4/5 4/11 4/13
**knows [1]** 19/5
**Kousisis [1]** 29/3

**L**

**labor [1]** 9/13
**laid [1]** 17/25
**largely [1]** 33/20
**last [6]** 4/25 32/14 33/4 39/12 45/23 45/24
**later [2]** 15/23 22/12
**Lauderdale [4]** 1/4 1/14 1/22 48/22
**law [11]** 1/16 15/5 16/5 37/14 37/17 37/17 37/18 38/3 38/9 38/9 38/11
**lawsuit [2]** 28/18 28/24
**lawsuits [3]** 14/12 14/22 17/10
**lawyers [1]** 36/14
**lay [1]** 21/12
**learned [2]** 31/25 33/4
**leased [1]** 20/9
**least [1]** 21/2
**leave [2]** 5/1 43/5
**left [5]** 15/14 19/20 20/7 20/14 21/16
**legal [4]** 14/6 16/5 16/21 29/20
**legitimacy [1]** 33/23
**LEIBOWITZ [2]** 1/2 1/9
**length [1]** 34/8
**lengthy [2]** 3/16 13/9
**lenient [1]** 33/3
**less [2]** 21/1 26/13
**lessen [1]** 27/23
**let [9]** 2/16 6/22 6/23 10/11 11/17 31/7 34/3 35/20 45/12
**let's [5]** 4/24 22/15 22/23 22/23 26/13
**letter [9]** 3/9 3/11 4/6 4/10 4/12 10/25 18/12 32/25 33/2
**letters [2]** 2/25 16/15
**level [4]** 10/14 10/15 10/19 47/11
**levels [4]** 10/16 35/19 36/6 36/7
**lie [2]** 37/1 37/8
**life [6]** 25/13 32/19 32/21 32/22 34/13 44/12
**lifestyle [3]** 12/21 12/21 12/24
**light [3]** 5/23 9/25 46/11
**like [26]** 3/10 5/6 12/25 13/21 18/9 21/20 23/15 26/25 27/7 28/5 28/5 30/11 31/4 32/5 32/11 36/7 36/14 36/17 37/2 37/4 39/6 40/3 40/7 45/13 46/21 47/8
**line [3]** 22/23 22/23 31/17
**list [1]** 23/4
**listed [3]** 22/15 22/18 26/17
**literally [1]** 3/11
**litigation [1]** 37/20
**little [2]** 24/21 37/19
**lived [2]** 19/14 19/18
**lives [1]** 32/22
**living [1]** 12/21
**locked [1]** 21/8
**long [3]** 13/2 14/3 30/2

**longer [2]** 12/22 29/17
**look [3]** 15/3 23/23 27/19
**looked [2]** 22/3 26/3
**looking [8]** 23/12 35/13 35/14 35/15 35/15 35/16 36/7 47/14
**Los [2]** 9/14 14/23
**Los Angeles [2]** 9/14 14/23
**loss [26]** 5/20 5/25 6/11 7/21 7/24 8/21 9/7 10/15 10/16 13/14 14/12 20/21 20/22 21/1 21/2 25/22 26/4 26/13 35/1 35/6 36/1 36/2 36/6 38/21 39/14 39/19
**losses [2]** 40/20 40/22
**lost [2]** 11/19 24/10
**lot [11]** 18/1 24/20 25/16 25/17 25/18 25/19 31/11 32/1 32/3 32/5 36/13
**love [1]** 32/20
**loves [1]** 27/3
**low [1]** 40/2
**luck [1]** 47/19

**M**

**M.O [2]** 13/15 17/6
**ma'am [2]** 32/16 33/8
**made [17]** 3/3 5/5 5/18 6/2 6/5 6/13 8/22 11/24 13/12 17/1 19/21 20/23 20/24 34/16 41/2 41/21 44/7
**main [1]** 36/4
**major [1]** 32/20
**make [28]** 5/25 6/24 8/11 9/10 9/15 9/20 12/10 13/17 17/23 18/13 20/2 20/18 20/20 21/18 23/9 29/8 33/18 33/21 37/13 39/16 40/5 43/13 43/17 43/23 44/2 44/10 46/17 47/11
**makes [3]** 20/1 34/14 36/21
**making [1]** 28/23
**man [5]** 26/4 26/20 34/12 34/14 37/4
**manager [3]** 18/16 19/9 20/17
**managers [1]** 18/15
**mandatory [2]** 42/8 42/15
**manner [2]** 41/1 42/22
**many [7]** 11/22 11/23 11/23 16/5 18/6 18/12 24/23
**MARC [2]** 1/12 2/7
**marc.anton [1]** 1/14
**Marked [2]** 4/9 4/15
**marshals [3]** 45/7 47/4 47/10
**material [2]** 16/13 41/16
**materially [2]** 29/4 40/12
**materials [1]** 20/5
**matter [5]** 2/2 2/18 2/19 47/18 48/15
**matters [1]** 37/18
**maximum [1]** 26/23
**may [11]** 3/4 8/8 22/13 24/10 29/2 29/5 31/21 41/11 43/5 45/23 46/21
**May 22nd [1]** 29/2
**maybe [4]** 22/18 28/11 37/2 37/2
**me [28]** 2/16 3/4 3/7 4/16 4/20 4/25 5/2 6/22 6/23 8/6 10/11 11/17 11/20 18/24 19/8 22/10 23/13 23/21 24/3 31/7 32/1 32/18 32/20 36/20 36/21 37/1 44/5 47/8
**mean [5]** 7/11 32/4 35/21 35/22 39/9
**means [1]** 43/6
**media [3]** 18/4 19/24 19/25
**medical [3]** 30/8 30/14 46/3
**memoranda [1]** 2/24
**memorandum [5]** 11/1 21/13 25/2 27/14 31/1
**mention [3]** 11/1 25/12 25/13

**mentioned [1]** 10/24
**mercy [1]** 37/2
**messages [4]** 17/5 18/22 23/22 23/23
**Miami [2]** 41/23 47/12
**Miami, [1]** 41/24
**Miami, Florida [1]** 41/24
**microphone [1]** 32/13
**middleman [1]** 22/19
**might [3]** 16/12 22/19 39/13
**milk [1]** 23/16
**million [8]** 25/22 25/23 26/4 26/11 26/13 26/13 26/25 35/17
**millions [1]** 20/7
**mind [1]** 20/3
**mine [1]** 45/6
**mine-run [1]** 45/6
**minimum [1]** 41/7
**minor [2]** 27/24 28/1
**minus [2]** 7/12 8/11
**minus two [1]** 7/12
**minutes [1]** 3/12
**miscarriage [1]** 35/25
**mischaracterizing [1]** 8/16
**missing [1]** 5/24
**misspoke [1]** 32/10
**misunderstood [1]** 33/22
**model [1]** 19/17
**models [1]** 19/17
**modifying [1]** 45/19
**mom [11]** 16/20 16/24 17/5 18/24 18/24 19/8 19/8 20/17 25/15 30/17 33/2
**mom's [1]** 33/1
**moment [4]** 4/8 11/19 32/9 33/11
**money [23]** 9/13 18/17 18/18 19/2 19/7 19/9 20/10 20/11 20/12 20/13 20/16 20/17 21/9 21/18 21/20 22/15 22/16 22/23 25/4 26/9 28/23 29/12 36/8
**monies [4]** 15/22 17/9 23/1 23/12
**monitor [1]** 41/15
**month [2]** 18/21 26/20
**monthly [1]** 41/10
**months [15]** 10/21 11/25 12/13 12/14 14/4 26/10 26/15 26/21 27/6 27/7 27/13 27/15 33/4 40/12 40/17
**months' [1]** 42/17
**moral [1]** 16/17
**more [12]** 6/14 8/4 10/16 17/14 18/24 19/2 34/5 34/19 35/12 35/12 36/3 36/25
**Morris [2]** 32/11 32/18
**Moses [4]** 22/3 22/5 23/15 24/6
**Moses Services [1]** 24/6
**Moshe [1]** 22/5
**most [7]** 9/25 14/22 20/23 20/23 21/12 28/16 44/24
**mother [17]** 3/10 4/13 15/19 18/16 18/24 19/9 19/14 19/17 23/5 24/24 27/3 27/4 27/4 27/7 28/9 30/23 37/2
**mother's [2]** 12/16 21/3
**motion [5]** 18/1 25/14 36/21 45/19 46/9
**motions [1]** 2/19
**moved [1]** 33/5
**moves [1]** 44/19
**Mr. [57]**
**Mr. Anderson [40]** 2/14 3/10 7/2 7/7 7/11 10/17 11/2 17/25 18/5 18/8 18/23 19/3 21/10 21/13 22/14 23/4 23/4 24/18 25/9 26/15 27/1 27/7 27/17 27/19 28/12 29/7 29/17 31/4 31/7 31/19 32/9 34/10

## M

**Mr. Anderson... [8]** 36/25 37/4 38/5 38/18 40/14 43/1 44/25 47/19
**Mr. Anderson's [3]** 4/13 27/18 37/25
**Mr. Anton [6]** 8/14 17/20 34/1 34/10 37/17 39/24
**Mr. Dominguez [5]** 5/18 6/9 6/14 23/6 31/8
**Mr. Dominguez's [1]** 5/7
**Mr. Jones [1]** 34/1
**Mr. Kisean [1]** 2/12
**MRI [1]** 30/20
**Ms. [43]** 2/15 2/17 3/2 3/3 3/6 4/11 4/16 5/2 5/5 6/3 6/6 6/7 6/10 8/13 10/10 10/22 11/8 11/17 17/21 22/12 22/14 23/20 23/21 24/3 24/16 25/25 31/6 32/11 33/9 34/10 34/11 35/17 37/15 38/15 38/16 40/12 42/20 45/11 46/13 46/17 47/24 48/1 48/4
**Ms. Bozanic [28]** 2/15 2/17 3/3 3/6 4/11 4/16 5/2 6/6 6/10 8/13 10/10 10/22 11/8 11/17 17/21 24/3 24/16 31/6 33/9 34/11 35/17 37/15 38/15 42/20 45/11 46/13 46/17 48/1
**Ms. Cook [1]** 6/7
**Ms. Kanema [1]** 32/11
**Ms. Shotwell [1]** 22/12
**Ms. Turner [10]** 3/2 6/3 22/14 23/20 23/21 34/10 38/16 40/12 47/24 48/4
**Ms. Turner's [2]** 5/5 25/25
**much [11]** 5/1 11/22 30/13 32/20 32/24 33/3 33/4 33/5 34/13 37/17 38/3
**multiple [1]** 9/11
**music [1]** 32/4
**must [3]** 41/4 41/7 43/3
**my [35]** 5/19 7/24 11/24 18/1 21/13 23/20 25/2 25/14 26/12 26/19 26/20 27/13 27/25 28/9 30/25 31/25 32/2 32/4 32/4 32/7 32/7 32/18 32/19 32/21 32/21 33/1 33/2 33/3 33/21 36/4 38/16 38/16 43/23 46/5 46/25
**myself [1]** 34/1

## N

**name [2]** 22/6 32/14
**named [2]** 4/21 32/14
**nature [5]** 21/25 24/11 33/19 34/7 34/17
**necessarily [1]** 29/19
**necessary [1]** 27/13
**need [6]** 23/23 24/15 25/6 27/11 27/12 47/20
**needed [1]** 20/3
**needs [3]** 32/13 36/15 38/11
**neighborhood [1]** 19/19
**neighborhoods [1]** 19/15
**never [5]** 14/5 18/17 20/9 20/10 46/1
**new [3]** 9/18 28/21 34/24
**New York [2]** 28/21 34/24
**niece [1]** 25/16
**niece's [1]** 25/12
**no [48]** 1/2 3/17 3/20 4/18 4/22 5/11 6/21 8/22 9/4 9/21 11/10 12/2 12/4 12/22 15/22 19/3 19/14 19/17 20/10 20/11 21/9 21/9 23/2 23/5 24/4 24/15 27/22 28/3 28/9 29/17 30/1 30/3 30/23 31/15 33/17 33/24 38/19 39/7 39/10 43/19 43/25 44/4 44/17 45/10 45/17 45/21 46/1 46/15

**nobody [2]** 19/11 19/16
**nobody's [1]** 46/8
**none [2]** 37/6 45/17
**normal [1]** 46/25
**North [1]** 41/23
**North Miami [1]** 41/23
**not [102]**
**note [3]** 5/17 38/23 44/2
**noted [1]** 42/13
**nothing [12]** 8/25 8/25 9/24 16/9 16/10 16/11 19/16 20/14 27/20 36/25 38/21 47/15
**notice [1]** 43/3
**notify [1]** 43/2
**November [2]** 8/20 14/25
**November 23rd [1]** 14/25
**November 4th [1]** 8/20
**now [16]** 6/10 7/1 11/19 12/12 19/5 22/10 25/17 30/16 31/21 34/1 42/20 43/2 44/11 46/11 47/6 47/14
**number [3]** 2/3 5/20 6/1
**numbers [2]** 20/22 36/1
**numeral [2]** 7/2 11/25

## O

**object [1]** 42/21
**objected [1]** 11/5
**objection [9]** 5/19 10/10 10/22 12/1 12/3 29/13 43/19 46/12 46/15
**objections [8]** 2/21 2/21 2/22 4/25 6/8 6/23 10/24 42/24
**obligations [3]** 41/5 41/8 41/20
**obstructed [1]** 38/12
**obstruction [3]** 27/5 38/20 40/13
**obviously [10]** 7/20 18/14 21/3 21/7 21/18 24/20 25/17 28/23 34/4 44/3
**occurred [3]** 14/24 14/25 16/2
**October [7]** 15/5 15/8 15/23 47/23 48/1 48/2 48/20
**October 16th [3]** 47/23 48/1 48/2
**October 21st [1]** 15/8
**October 23rd [2]** 15/5 15/23
**off [4]** 20/4 20/4 28/21 36/19
**offender [4]** 7/12 8/11 40/2 40/7
**offense [14]** 7/15 7/16 8/24 8/25 9/9 10/14 10/16 10/19 16/1 16/2 17/18 27/23 33/20 34/18
**offenses [2]** 14/15 14/24
**offer [1]** 26/22
**office [7]** 1/13 41/14 41/14 41/18 41/22 42/6 44/5
**officers [2]** 46/6 47/10
**Official [3]** 1/21 48/10 48/21
**Oftentimes [1]** 14/6
**okay [17]** 4/1 4/19 4/23 5/12 5/22 11/4 12/8 20/19 20/19 24/16 28/15 33/11 33/12 44/6 46/16 46/19 48/6
**old [9]** 9/17 12/20 17/25 18/9 18/10 19/13 19/19 25/6 25/12
**on [71]**
**once [5]** 22/24 25/6 40/24 44/2 45/16
**one [35]** 4/8 7/8 8/3 8/4 9/9 9/15 9/18 10/8 10/18 11/19 11/20 12/22 16/16 18/24 20/10 20/11 22/2 23/19 25/3 28/1 30/23 31/10 31/15 32/9 33/11 34/2 35/13 36/11 36/15 38/11 38/12 38/18 38/19 39/12 45/4
**one-point [1]** 9/9

**online [1]** 25/1
**only [12]** 6/17 7/10 14/9 19/17 23/19 24/13 25/15 27/1 31/10 32/21 34/2 37/14
**opposed [1]** 23/24
**or [45]** 2/22 3/18 6/10 6/11 6/14 7/16 7/17 9/13 10/16 13/16 13/17 13/20 13/25 16/7 16/11 16/13 16/22 17/9 17/10 17/10 18/10 20/12 20/17 22/8 22/14 22/19 24/1 24/11 25/22 27/17 28/3 28/13 29/12 30/13 30/25 31/22 33/23 34/2 34/19 37/6 40/10 41/18 41/19 42/12 42/21
**order [4]** 2/1 4/24 41/9 45/1
**ordered [6]** 13/4 13/7 21/16 40/18 40/24 42/14
**other [20]** 6/23 12/1 12/23 13/25 14/7 16/4 16/11 18/6 23/14 23/19 24/8 25/16 25/24 26/17 26/17 27/22 31/15 37/12 41/18 43/25
**others [1]** 32/21
**out [21]** 17/25 18/18 18/21 19/20 20/13 21/12 22/12 23/15 24/1 24/13 24/14 25/20 26/8 28/18 28/25 29/16 32/3 34/18 35/17 44/5 44/18
**outlined [3]** 13/13 14/13 16/5
**outset [1]** 33/21
**outside [2]** 7/19 8/2
**outstanding [3]** 4/25 5/3 23/12
**over [8]** 2/18 3/1 3/10 13/5 18/16 25/23 26/13 46/22
**overnight [3]** 19/13 19/21 20/16
**overstates [1]** 36/6
**overweight [1]** 16/11
**overwhelming [1]** 35/12
**owed [1]** 29/12
**owes [1]** 22/14
**own [2]** 31/20 46/5
**owned [1]** 22/5
**owner [1]** 22/7

## P

**P.A [1]** 1/16
**p.m [4]** 1/5 1/5 2/1 48/8
**pacemaker [1]** 30/9
**page [4]** 4/6 4/12 11/20 48/16
**pages [2]** 1/7 28/5
**paid [22]** 8/5 8/7 8/10 13/24 14/6 15/7 17/9 17/10 21/6 21/24 22/7 23/11 23/14 26/10 28/14 28/16 29/6 29/12 29/12 29/15 37/18 39/8
**Palm [1]** 1/17
**Paragraph [6]** 9/12 10/3 10/9 14/15 14/17 15/4
**Paragraph 62 [4]** 9/12 10/3 10/9 15/4
**Paragraph 66 [1]** 14/15
**Paragraph 68 [1]** 14/17
**part [10]** 4/2 5/18 8/24 10/6 34/10 35/6 36/12 37/3 38/15 38/16
**partially [1]** 7/3
**particular [7]** 8/17 8/21 13/22 14/8 14/10 17/13 23/3
**parties [4]** 3/4 4/6 22/11 33/13
**pass [1]** 3/13
**passport [3]** 46/11 46/12 46/17
**PAUL [3]** 1/6 2/3 40/16
**pauperis [1]** 43/5
**pay [27]** 12/25 13/5 13/5 13/5 13/7 13/8

**P**

**pay... [21]** 13/10 13/19 13/22 13/24 16/6 16/7 16/8 16/14 18/25 19/2 20/18 23/17 28/23 33/16 40/25 41/4 41/7 41/10 41/16 42/14 43/4
**payable [1]** 41/21
**paying [2]** 16/20 18/14
**payment [11]** 13/11 13/17 13/20 13/20 15/12 15/19 39/6 41/2 41/12 41/15 43/6
**payments [1]** 41/17
**penalized [1]** 38/6
**penalty [1]** 36/15
**pending [1]** 28/24
**people [26]** 18/6 19/12 19/23 19/25 19/25 20/23 21/6 24/8 24/20 25/8 25/16 25/18 25/18 25/19 26/6 26/24 27/22 28/14 28/15 28/16 32/3 35/3 35/20 40/3 46/7 46/9
**per [1]** 41/8
**percent [2]** 41/4 41/10
**perfect [1]** 46/8
**perform [1]** 21/18
**perhaps [3]** 12/22 13/17 25/22
**period [3]** 7/19 28/13 41/2
**persistent [1]** 19/21
**person [6]** 19/3 25/25 27/20 27/21 28/21 42/5
**person's [1]** 36/8
**personal [1]** 46/5
**photos [1]** 25/1
**piece [1]** 38/10
**placed [2]** 16/1 42/2
**places [1]** 34/16
**Plaintiff [1]** 1/4
**plan [1]** 7/17
**planning [1]** 11/8
**plate [1]** 32/23
**played [1]** 32/20
**please [4]** 2/5 33/3 33/6 40/14
**plus [3]** 11/10 11/10 34/24
**podium [1]** 32/13
**point [26]** 7/8 7/12 8/11 9/5 9/9 9/15 10/8 10/18 14/1 18/15 19/1 19/16 25/20 25/21 28/25 29/13 36/21 38/19 39/1 39/14 39/18 40/2 40/2 40/4 40/10 45/3
**pointable [1]** 9/9
**points [6]** 10/7 35/17 36/19 37/6 38/19 40/7
**police [3]** 9/14 14/7 16/22
**Ponzi [1]** 35/15
**portray [1]** 16/16
**portrayed [1]** 21/14
**possible [5]** 43/12 45/13 47/5 47/8 47/12
**possibly [2]** 29/21 30/12
**preclude [3]** 39/3 39/4 41/17
**presence [3]** 46/21 46/25 47/2
**present [3]** 1/19 2/13 13/13
**presentation [1]** 37/16
**presentence [3]** 7/1 33/13 42/13
**presents [1]** 34/9
**preserved [4]** 6/13 6/14 10/10 42/25
**preserving [1]** 6/17
**presided [2]** 2/18 3/1
**pretenses [1]** 29/5
**pretrial [1]** 2/18
**pretty [1]** 31/13
**prevented [1]** 15/16

**prevents [1]** 34/9
**previous [2]** 5/5 42/23
**previously [2]** 7/22 16/3
**primarily [1]** 11/11
**principal [1]** 10/4
**prior [10]** 3/7 7/9 7/11 7/13 7/15 8/23 9/1 9/3 9/24 39/6
**prison [3]** 19/14 19/18 41/3
**Prisons [7]** 30/15 40/16 41/13 42/5 43/10 43/20 45/8
**probably [1]** 11/13
**probation [11]** 9/4 16/1 16/2 16/22 17/18 30/5 41/14 41/18 42/6 44/5 46/12
**problem [4]** 5/16 9/22 24/4 47/2
**proceeding [2]** 4/14 11/9
**proceedings [2]** 48/8 48/15
**produce [1]** 44/9
**proffer [1]** 5/23
**program [1]** 43/17
**promised [1]** 16/8
**promises [1]** 13/10
**pronounced [1]** 42/22
**proof [2]** 34/4 37/10
**properly [1]** 11/15
**property [3]** 9/13 14/6 14/9
**prosecution [3]** 34/4 34/18 35/11
**protection [1]** 6/25
**prove [4]** 28/1 37/13 38/6 38/13
**provide [1]** 10/25
**provided [1]** 6/4
**PSI [9]** 2/20 9/17 13/3 14/13 16/5 21/14 27/9 28/8 30/6
**PSR [5]** 2/22 5/1 9/12 9/20 42/9
**PTSD [1]** 16/10
**public [2]** 31/9 45/1
**purchase [2]** 13/16 15/9
**pure [1]** 16/19
**purportedly [1]** 13/24
**purporting [1]** 13/22
**purposes [26]** 4/2 4/7 4/14 5/15 5/25 6/1 6/12 6/16 7/24 9/7 10/9 10/14 11/4 11/5 11/7 11/9 11/10 11/24 11/25 25/23 36/16 36/18 36/23 39/4 40/6 40/22
**pursuant [2]** 40/19 48/12
**put [1]** 46/24

**Q**

**qualify [1]** 7/12
**quarter [1]** 41/8
**questions [4]** 11/12 11/16 11/18 11/22
**quickly [1]** 37/11
**quite [3]** 23/4 27/15 30/2
**quote [1]** 16/16

**R**

**rags [1]** 34/15
**raised [2]** 11/16 11/19
**raises [3]** 11/16 11/18 11/21
**Rakoff [3]** 34/23 36/5 36/17
**range [7]** 6/24 10/11 10/20 12/13 26/21 33/14 39/18
**rarely [2]** 34/2 34/8
**rate [1]** 41/10
**RDAP [2]** 43/16 43/17
**read [1]** 28/4
**real [4]** 35/6 35/7 35/8 36/18
**reality [1]** 37/22
**realizes [1]** 20/6

**really [7]** 17/2 28/11 34/22 36/13 36/16 37/7 38/4
**Realtime [1]** 48/10
**reason [6]** 9/4 10/4 18/3 29/7 29/21 39/22
**reasonable [1]** 24/12
**reasons [6]** 10/4 10/8 31/2 35/21 36/3 39/12
**receipt [2]** 13/22 17/6
**receipts [6]** 16/20 22/16 23/24 28/2 28/3 28/6
**receive [2]** 22/3 24/7
**received [4]** 15/6 15/22 23/23 24/7
**recognizes [1]** 20/15
**recommend [2]** 47/3 47/4
**recommendation [5]** 43/11 43/13 43/16 43/18 43/23
**recommendations [2]** 43/9 43/25
**record [10]** 2/6 4/2 4/3 5/19 11/17 18/4 33/19 44/7 44/12 47/22
**recovered [2]** 14/9 17/10
**reduction [3]** 7/12 8/11 17/1
**referenced [2]** 4/2 42/8
**reflect [3]** 36/4 38/20 39/11
**reflecting [1]** 39/20
**reflection [1]** 38/22
**regard [2]** 44/23 46/7
**regarding [1]** 15/19
**regardless [2]** 24/21 40/7
**regulations [1]** 48/17
**relax [1]** 46/25
**release [7]** 41/9 42/1 42/2 42/4 42/7 42/18 44/3
**released [1]** 42/6
**relevant [19]** 7/8 7/23 8/16 8/21 9/6 9/22 9/23 10/2 13/13 13/14 14/12 14/16 14/17 19/24 20/3 22/24 34/20 40/1 40/9
**relied [1]** 27/22
**relies [1]** 12/25
**rely [2]** 13/18 25/18
**remains [1]** 7/5
**remand [4]** 17/16 44/19 45/21 46/12
**remanded [3]** 45/7 46/10 46/17
**remember [2]** 16/24 17/4
**remembers [1]** 25/5
**remind [1]** 45/23
**renew [2]** 5/6 42/23
**rented [1]** 20/9
**repay [2]** 21/15 21/19
**report [7]** 2/20 7/1 15/5 33/13 41/15 42/5 42/13
**reported [3]** 1/21 15/8 48/15
**Reporter [3]** 1/21 48/11 48/21
**repossessed [1]** 20/8
**represent [1]** 35/13
**representative [3]** 15/9 15/13 15/15
**requirement [1]** 42/11
**rereviewed [1]** 4/10
**residence [1]** 15/14
**resolved [2]** 5/1 7/3
**resort [1]** 14/5
**resorted [1]** 14/7
**respect [9]** 6/5 37/23 38/8 38/9 38/9 38/11 38/11 46/8 46/11
**response [1]** 2/22
**responses [1]** 2/21
**responsibility [7]** 10/25 11/3 11/11 27/8 27/9 38/22 39/3

**R**

**rest [1]** 11/8
**restitution [33]** 5/16 5/16 8/5 8/7 8/9 20/24 20/25 21/1 21/16 21/24 22/1 22/11 22/22 23/10 23/25 24/12 24/15 26/10 29/12 39/6 40/21 40/24 40/25 41/10 41/15 41/20 41/21 41/24 42/12 42/18 46/20 47/20 48/1
**restriction [2]** 42/12 44/1
**result [1]** 17/10
**review [6]** 3/7 3/15 4/17 4/20 5/1 13/3
**reviewed [9]** 2/17 2/17 2/19 2/20 2/23 2/25 3/6 4/1 16/15
**riches [1]** 34/15
**right [28]** 3/15 6/22 9/19 11/17 18/21 19/5 25/17 28/15 30/15 34/25 34/25 34/25 35/1 35/1 38/5 39/18 43/1 43/2 43/19 43/22 44/11 44/20 45/6 46/1 47/1 47/6 47/14 47/14
**righteous [1]** 35/11
**rightly [1]** 10/7
**rights [1]** 37/25
**rise [1]** 40/14
**robbed [1]** 28/21
**ROBBERT [1]** 1/19
**rock [1]** 19/5
**rodriguez [6]** 1/21 1/23 48/10 48/20 48/20 48/22
**role [6]** 19/17 19/17 27/23 27/24 28/1 32/20
**rolls [1]** 25/2
**Roman [2]** 7/2 11/25
**Room [1]** 41/23
**Room 8N09 [1]** 41/23
**rose [1]** 19/13
**rough [1]** 36/1
**Row [1]** 24/24
**Royal [1]** 1/17
**RPR [2]** 1/21 48/20
**rudely [1]** 23/8
**ruled [3]** 7/22 21/3 25/23
**ruling [1]** 5/5
**run [3]** 42/3 45/6 45/25

**S**

**said [6]** 23/13 30/21 33/2 34/10 34/11 34/21
**sake [1]** 4/3
**Sam [1]** 35/16
**same [21]** 5/25 6/3 6/13 7/8 7/16 15/9 16/3 17/18 27/2 30/8 35/23 36/8 36/9 38/17 39/22 40/9 40/11 45/17 47/24 48/3 48/5
**sandbagged [1]** 11/6
**sat [2]** 33/25 39/16
**satisfy [1]** 41/19
**saw [5]** 13/21 14/4 18/22 31/18 33/25
**say [12]** 19/10 26/13 28/5 31/7 31/19 31/20 32/14 32/19 33/1 36/5 39/13 44/24
**saying [9]** 22/13 22/18 22/21 22/24 23/10 23/16 24/9 29/1 40/6
**says [6]** 7/2 19/1 22/4 28/13 39/2 39/5
**schedule [2]** 30/24 41/12
**scheduled [3]** 30/18 30/22 30/23
**scheme [5]** 7/17 15/24 16/3 17/4 35/15
**SDFL [1]** 43/14
**SDNY [1]** 36/18

**sealed [2]** 18/2 18/3
**Sean [3]** 18/23 19/1 19/3
**search [1]** 14/8
**second [6]** 3/21 4/10 11/20 22/17 36/11 38/7
**section [4]** 33/15 40/19 41/23 48/13
**Section 3553 [1]** 33/15
**Section 3664 [1]** 40/19
**security [3]** 15/17 46/6 47/10
**see [12]** 3/18 14/11 18/11 20/6 20/21 21/23 22/15 23/5 31/10 31/10 33/2 34/13
**seek [2]** 16/21 36/25
**seeking [4]** 6/6 8/9 9/7 24/8
**seem [1]** 12/24
**seems [2]** 4/25 21/13
**seen [3]** 3/19 3/20 33/4
**seized [1]** 17/10
**self [5]** 29/25 30/7 42/12 44/1 44/17
**self-employment [2]** 42/12 44/1
**self-surrender [3]** 29/25 30/7 44/17
**send [3]** 8/6 17/6 28/4
**sense [2]** 22/10 40/5
**sent [1]** 15/19
**sentence [32]** 7/9 7/11 7/13 7/14 8/23 12/10 12/14 12/15 12/16 12/19 17/13 17/15 17/16 17/22 26/7 27/11 27/13 29/25 29/25 31/21 35/8 38/16 38/16 38/18 39/11 39/22 40/9 40/11 42/20 42/22 43/2 47/17
**sentenced [5]** 26/1 26/21 27/1 27/6 40/14
**sentences [1]** 26/17
**sentencing [21]** 1/9 2/16 2/23 3/1 3/8 6/2 7/15 11/1 16/25 21/4 25/2 25/25 27/14 30/22 33/21 34/21 35/23 37/3 38/14 40/23 45/3
**separate [1]** 9/22
**September [1]** 30/21
**September 17th [1]** 30/21
**serial [1]** 34/7
**served [1]** 40/18
**Services [4]** 22/3 22/5 23/15 24/6
**set [5]** 30/20 33/14 39/1 40/21 47/23
**severally [1]** 40/25
**severity [2]** 33/19 34/17
**Seybold [1]** 35/20
**shall [11]** 40/21 40/25 41/2 41/10 41/14 41/21 42/1 42/5 42/7 42/10 42/14
**shaping [1]** 32/20
**she [11]** 6/7 6/8 17/1 18/16 19/1 23/22 32/12 32/14 32/15 37/15 37/16
**she'll [1]** 46/17
**she's [3]** 18/17 25/14 27/5
**sheer [1]** 34/17
**shift [2]** 45/5 45/5
**shifts [1]** 45/5
**short [1]** 14/3
**Shotwell [1]** 22/12
**should [24]** 6/10 7/9 7/25 9/5 11/14 17/1 20/11 21/4 21/7 24/11 26/14 26/16 27/2 29/12 31/17 35/22 35/23 38/6 39/9 39/10 39/11 39/25 40/1 40/12
**shouldn't [1]** 8/10
**show [1]** 37/22
**showed [6]** 18/20 20/10 33/5 34/5 34/5 37/11
**showing [2]** 20/4 20/4

**shown [1]** 22/24
**shows [5]** 13/3 21/9 21/18 34/9 44/2
**signed [1]** 4/13
**similar [1]** 13/15
**simple [1]** 16/19
**simply [7]** 6/11 9/1 9/3 35/2 38/12 43/6 45/18
**since [3]** 21/17 24/21 30/2
**single [2]** 8/7 21/20
**sir [5]** 31/23 43/1 43/7 43/8 47/19
**sister [2]** 25/16 32/10
**sit [1]** 34/1
**sitting [3]** 26/12 31/11 31/22
**situation [5]** 19/20 25/5 25/17 32/1 32/25
**sixteen [2]** 36/6 36/7
**Skid [1]** 24/24
**sleeves [1]** 25/3
**small [2]** 4/12 13/17
**small-type [1]** 4/12
**smart [3]** 34/14 36/14 37/3
**so [50]**
**social [2]** 19/24 19/25
**solely [1]** 16/12
**solicitous [1]** 44/23
**some [18]** 11/12 17/9 18/9 18/15 19/1 19/16 23/15 23/21 23/23 24/7 24/19 26/17 29/13 29/23 30/17 38/1 39/8 39/22
**somebody [2]** 24/22 34/15
**somehow [3]** 20/1 26/7 39/25
**someone [2]** 22/18 22/19
**something [11]** 6/10 20/12 24/11 24/12 24/22 26/4 26/11 33/21 34/16 38/20 44/10
**sometimes [3]** 14/4 14/4 14/5
**son [1]** 40/13
**soon [6]** 21/19 34/4 45/13 47/5 47/8 47/12
**sophistication [1]** 35/19
**sorry [4]** 9/2 25/10 26/19 32/25
**sorts [1]** 22/20
**SOUTHERN [4]** 1/1 34/24 43/12 48/12
**speak [4]** 6/10 21/22 30/19 32/18
**special [6]** 1/19 27/17 42/11 42/13 42/15 42/19
**specific [3]** 18/3 22/15 38/8
**specifically [1]** 6/6
**spell [1]** 32/14
**spots [1]** 35/14
**spreadsheet [6]** 8/19 13/14 14/13 22/17 23/1 23/12
**stand [5]** 5/20 37/1 37/8 37/9 37/12
**standard [1]** 42/8
**standing [5]** 6/8 23/9 23/16 31/22 47/1
**star [1]** 12/20
**start [1]** 5/2
**started [5]** 13/1 14/19 21/8 21/9 24/22
**starting [2]** 7/22 39/1
**starts [1]** 28/23
**state [4]** 32/13 32/23 34/3 47/22
**stated [2]** 10/5 10/18
**statements [2]** 18/20 33/12
**STATES [17]** 1/1 1/3 1/10 1/13 2/3 2/8 33/15 39/17 40/19 41/13 41/13 41/14 41/22 42/15 48/11 48/13 48/17
**status [2]** 13/1 13/18
**statute [2]** 34/20 45/3

**S**

**statutory [2]** 12/6 33/14
**stay [1]** 20/3
**steal [3]** 26/11 26/24 28/12
**steals [1]** 16/14
**stenographically [1]** 48/14
**stepped [1]** 32/23
**still [7]** 5/3 18/9 19/4 28/18 29/5 38/4 44/8
**stocks [1]** 20/11
**stolen [1]** 14/10
**stood [1]** 23/13
**stop [1]** 16/23
**story [1]** 34/15
**straying [1]** 32/6
**string [1]** 14/3
**strong [1]** 16/17
**structure [2]** 36/19 38/24
**studio [1]** 30/4
**stuff [3]** 24/7 28/12 32/5
**submit [1]** 13/21
**subsequently [3]** 15/14 15/18 41/17
**subtraction [1]** 11/10
**successful [1]** 13/23
**such [4]** 19/11 36/22 41/11 42/3
**sue [1]** 14/7
**sued [1]** 13/9
**sufficiency [1]** 33/23
**suit [1]** 13/4
**Suite [2]** 1/13 1/17
**sum [1]** 42/17
**superficial [1]** 20/13
**supervised [4]** 42/2 42/7 42/18 44/3
**supervision [1]** 42/8
**support [2]** 12/19 32/21
**supported [1]** 25/18
**sure [8]** 6/24 9/10 9/15 23/9 26/2 26/10 46/17 47/11
**surrender [4]** 29/25 30/7 44/17 45/12
**swing [1]** 38/19
**system [3]** 14/6 16/5 37/2

**T**

**table [4]** 10/16 35/1 36/6 39/19
**take [10]** 4/24 11/8 15/3 30/11 33/6 37/1 37/8 39/13 39/15 44/4
**taken [3]** 15/7 30/15 45/25
**takes [1]** 36/11
**taking [2]** 22/16 36/8
**talents [1]** 34/17
**talk [6]** 18/3 20/25 20/25 27/4 29/14 37/20
**talked [5]** 29/3 33/5 36/13 37/19 38/24
**talking [2]** 9/12 9/16
**taught [1]** 32/1
**Tavberidze [1]** 36/17
**tell [8]** 2/16 3/4 5/2 8/3 23/3 23/18 28/19 31/24
**telling [3]** 18/23 18/23 47/6
**temporarily [1]** 28/13
**tempted [1]** 27/23
**ten [2]** 6/14 37/1
**tendered [1]** 15/12
**term [1]** 42/2
**terms [1]** 42/3
**testified [3]** 3/2 24/9 27/5
**testify [1]** 5/10
**text [4]** 17/5 18/22 23/22 23/23

**texting [1]** 28/2
**than [7]** 17/14 18/5 21/2 26/13 36/25 37/12 40/13
**thank [17]** 3/14 4/18 4/23 8/13 17/19 17/20 17/24 31/6 32/9 32/18 33/7 33/8 45/10 46/18 47/15 48/6 48/7
**Thanks [1]** 33/8
**Thanksgiving [1]** 24/25
**that [347]**
**that's [42]** 3/6 4/5 8/2 8/5 9/19 9/19 14/13 14/16 14/17 14/18 16/24 17/3 20/7 20/19 21/6 21/7 21/15 21/16 23/7 28/5 28/18 29/17 30/20 32/8 34/14 34/20 36/4 36/9 36/9 36/12 36/25 37/5 37/5 38/25 39/7 43/22 44/22 46/1 46/5 46/14 47/17 47/17
**theft [2]** 9/13 14/23
**their [13]** 12/9 13/24 14/2 14/6 17/6 17/6 29/13 31/18 46/7 46/8 47/7 47/11 47/13
**them [18]** 3/13 3/15 3/19 3/20 3/21 3/22 3/23 14/3 16/5 16/14 17/6 20/1 26/18 34/19 40/4 43/22 47/6 47/14
**themselves [1]** 38/23
**then [14]** 6/14 6/22 6/23 7/25 8/3 14/9 14/21 15/14 21/25 24/5 32/14 36/20 41/4 41/7
**theory [1]** 29/10
**there [50]**
**there's [17]** 6/9 9/4 10/13 19/11 22/17 27/12 31/11 32/5 34/2 34/19 35/12 36/16 38/21 39/12 40/2 40/9 40/10
**therefore [2]** 10/11 40/1
**these [14]** 3/18 16/8 20/23 26/6 26/8 28/2 28/3 28/6 28/15 29/15 30/18 31/12 34/2 41/16
**they [25]** 5/24 10/6 10/6 10/7 12/10 12/16 14/6 14/7 16/21 17/3 24/8 26/9 26/9 29/15 31/14 35/21 35/22 35/23 37/6 38/6 45/25 46/8 47/7 47/9 47/12
**they're [6]** 3/16 7/21 10/5 19/24 22/24 42/25
**thick [1]** 38/1
**thief [4]** 14/19 16/19 17/17 21/15
**thing [6]** 8/4 22/18 23/19 37/14 39/12 44/15
**things [11]** 6/17 18/13 19/10 19/19 20/5 20/13 20/18 23/10 39/6 40/7 45/17
**think [61]**
**thinking [1]** 20/19
**this [115]**
**This Court [1]** 44/23
**Thomas [1]** 30/19
**those [15]** 6/17 10/8 15/24 20/22 22/22 23/24 24/13 25/3 28/20 28/22 30/11 31/2 36/3 39/12 46/9
**though [4]** 10/24 18/9 35/10 38/25
**thought [2]** 33/25 34/1
**threaten [1]** 16/21
**three [4]** 21/1 37/6 42/2 42/18
**three years [1]** 42/2
**three years' [1]** 42/18
**through [6]** 14/19 14/20 20/8 23/4 26/18 39/16
**Thursday [1]** 45/24
**tight [1]** 21/10
**time [13]** 5/14 12/22 13/2 13/15 18/24 19/6 28/14 30/2 34/8 41/11 44/25 45/23

**45/24**
**times [4]** 14/7 18/14 29/1 34/11
**Title [3]** 33/15 40/19 48/13
**Title 18 [1]** 40/19
**today [15]** 4/2 5/10 10/5 11/24 12/7 12/23 13/2 20/6 20/12 20/15 23/8 23/23 25/8 45/8 46/10
**together [2]** 12/16 17/4
**told [1]** 23/21
**too [1]** 40/4
**took [5]** 18/16 28/21 32/23 35/16 45/25
**total [3]** 10/14 42/17 42/17
**toward [2]** 41/5 41/8
**tragic [1]** 34/14
**training [1]** 18/17
**transaction [1]** 29/4
**transcript [2]** 48/14 48/16
**transfer [2]** 15/21 15/22
**transported [3]** 47/5 47/8 47/11
**traveled [1]** 15/10
**treat [5]** 27/17 35/25 40/3 46/7 46/9
**treated [2]** 35/23 36/9
**treating [1]** 40/3
**TREVOR [2]** 1/12 2/8
**Trevor Jones [1]** 2/8
**trevor.jones [1]** 1/15
**trial [13]** 2/19 6/3 13/21 29/7 29/18 29/21 30/2 31/10 31/14 36/15 36/25 39/3 39/21
**tries [1]** 25/7
**true [2]** 34/15 48/14
**truly [1]** 45/4
**truth [1]** 17/3
**try [2]** 15/13 47/9
**trying [1]** 18/13
**turn [1]** 31/7
**Turner [11]** 3/2 6/3 22/14 23/20 23/21 34/10 38/16 40/12 41/1 47/24 48/4
**Turner's [3]** 5/5 16/25 25/25
**TV [2]** 20/4 37/23
**two [12]** 4/6 6/17 7/12 8/11 10/7 20/22 28/20 31/8 31/12 34/2 36/19 38/19
**two-page [1]** 4/6
**type [2]** 4/12 29/23

**U**

**U.S [3]** 26/5 29/3 41/22
**unable [1]** 43/4
**unanimity [1]** 10/13
**unanimously [1]** 34/6
**under [10]** 8/23 9/5 10/2 11/13 29/4 34/22 39/1 39/16 40/8 45/3
**understand [8]** 5/4 8/8 22/9 27/15 27/16 27/16 31/9 43/7
**unexpected [1]** 41/18
**unfair [1]** 38/25
**UNICOR [2]** 41/4 41/7
**UNITED [17]** 1/1 1/3 1/10 1/13 2/3 2/8 33/15 39/17 40/19 41/13 41/13 41/14 41/22 42/15 48/11 48/13 48/17
**United States [10]** 2/3 2/8 33/15 39/17 40/19 41/13 41/13 41/14 41/22 42/15
**unjust [1]** 38/17
**unless [1]** 22/11
**unpaid [2]** 23/1 42/12
**unsophisticated [1]** 36/8
**until [6]** 13/2 15/12 16/21 22/15 30/18 41/11

## U

**unwarranted [1]** 38/14
**up [16]** 3/13 4/11 10/6 11/9 19/21 20/20 22/3 22/23 22/23 23/9 25/3 31/11 32/23 43/22 44/4 45/17
**upon [4]** 12/25 13/18 41/9 42/1
**us [3]** 22/12 25/8 36/11
**usdoj.com [1]** 1/15
**usdoj.gov [1]** 1/14
**use [1]** 37/4
**used [2]** 13/24 35/13
**using [1]** 41/18
**USPO [1]** 1/19

## V

**Valley [1]** 9/14
**valuables [1]** 13/25
**value [1]** 22/17
**variance [10]** 18/2 25/14 30/25 33/22 36/4 36/12 37/5 38/10 39/15 39/20
**vary [4]** 31/3 36/3 38/7 38/25
**vehicle [1]** 15/15
**vendor [1]** 22/15
**vendors [3]** 22/23 35/5 35/19
**verified [2]** 24/6 30/5
**versions [1]** 9/11
**versus [4]** 2/3 29/3 30/15 39/17
**very [21]** 9/20 11/18 11/21 18/10 18/19 19/22 19/22 21/17 25/10 25/14 26/3 31/12 33/21 34/14 34/16 38/24 39/16 40/8 45/1 45/14 47/7
**victim [9]** 8/19 10/16 13/19 15/7 15/20 15/21 29/4 35/15 35/17
**victims [18]** 5/20 6/1 6/14 12/5 12/6 12/6 13/1 13/24 14/2 14/5 16/8 16/21 28/15 35/5 35/16 35/22 41/25 45/2
**victims' [2]** 40/20 40/22
**view [7]** 10/2 12/9 17/21 18/5 35/11 37/7 38/17
**violations [3]** 30/1 30/3 44/17
**voluntary [1]** 39/6

## W

**wages [2]** 41/3 41/5
**waive [1]** 46/21
**waived [5]** 6/11 11/7 11/12 11/15 46/25
**waiving [1]** 47/1
**walk [1]** 35/20
**want [28]** 3/18 5/9 5/13 5/17 6/24 9/15 16/7 16/14 16/15 25/11 25/24 28/19 29/7 30/19 31/7 31/20 31/24 32/19 33/1 33/2 33/6 33/18 33/20 36/23 39/13 39/15 40/8 47/23
**wanted [6]** 9/19 13/17 23/8 25/20 28/25 44/1
**wants [4]** 4/20 21/23 25/11 44/10
**warrant [1]** 14/9
**was [106]**
**wasn't [9]** 10/24 13/23 17/1 18/17 24/22 28/1 28/2 30/21 45/18
**waste [1]** 5/14
**watch [3]** 18/25 21/10 22/7
**watches [8]** 13/5 13/6 13/25 19/12 28/10 28/20 28/22 35/20
**way [4]** 19/10 20/18 33/22 35/12
**ways [3]** 18/9 18/12 23/9
**we [25]** 7/25 8/1 10/23 10/24 13/13 19/1 24/14 25/21 26/14 28/8 29/11 29/14

29/18 29/19 29/20 30/22 37/20 37/22 43/21 43/24 46/6 46/24 47/17 47/18 47/20
**we'll [9]** 4/3 5/2 5/20 11/13 20/20 20/25 24/1 24/12 42/23
**we're [9]** 2/16 5/15 5/17 7/25 8/2 9/12 9/16 23/12 23/19
**we've [2]** 10/12 33/4
**wear [1]** 15/12
**wearing [1]** 15/15
**well [15]** 3/3 5/14 8/1 17/1 20/24 26/1 28/16 28/24 29/9 30/22 31/5 32/11 38/7 38/10 39/15
**went [9]** 7/18 18/18 18/18 20/13 20/13 22/25 23/3 29/7 46/2
**were [22]** 3/3 6/2 12/16 13/23 16/20 16/21 17/5 17/9 18/20 18/22 19/19 20/9 20/10 20/23 20/24 21/9 21/9 26/7 31/12 39/23 45/17 45/24
**West [1]** 9/14
**West Valley [1]** 9/14
**Weston [1]** 1/17
**what [33]** 2/17 3/4 5/2 5/22 9/16 10/6 10/6 19/7 22/6 22/12 22/21 25/10 26/10 28/5 28/8 28/16 28/19 31/10 33/2 34/9 34/14 34/21 36/5 37/15 37/17 37/19 37/21 37/21 37/21 39/5 40/6 46/13 47/4
**what's [3]** 19/4 21/25 47/21
**whatever [6]** 4/24 13/16 21/16 31/3 31/22 32/14
**when [14]** 13/20 13/20 14/18 18/14 19/6 21/7 25/5 28/23 29/17 31/11 33/24 33/25 37/23 44/5
**whenever [1]** 47/13
**where [18]** 3/2 15/4 18/23 19/23 19/25 23/11 26/9 26/11 26/24 34/21 34/22 36/7 36/15 37/2 40/3 40/4 42/6 44/12
**whether [4]** 11/13 22/14 29/22 30/12
**which [19]** 6/9 6/12 9/13 12/15 14/14 15/1 16/24 22/18 23/21 24/11 26/19 26/22 33/13 36/5 36/11 39/13 40/3 42/22 43/6
**whichever [1]** 6/12
**while [5]** 16/2 19/13 28/10 42/6 44/17
**whites [1]** 36/7
**who [31]** 2/12 12/5 12/19 14/8 17/7 17/17 19/3 19/13 19/17 19/18 19/25 20/6 21/13 21/15 23/5 23/5 23/7 23/8 24/9 25/4 25/9 25/25 26/6 27/21 28/2 29/3 34/5 35/3 35/14 35/20 36/8
**whoever [1]** 28/3
**whole [3]** 20/23 20/24 29/15
**why [11]** 8/3 9/4 9/19 29/7 29/21 30/21 35/10 37/5 37/5 38/25 46/1
**widest [1]** 10/1
**will [39]** 3/21 4/1 4/5 4/11 11/6 17/4 19/10 21/15 22/10 22/12 23/14 24/14 24/14 27/8 28/19 28/23 29/1 29/22 29/24 29/24 30/13 30/14 33/17 33/22 36/3 36/4 36/11 38/7 40/8 40/10 41/24 43/13 43/23 45/7 46/10 46/25 47/13 48/1
**wire [5]** 13/21 15/20 16/20 34/3 34/22
**wish [9]** 3/7 4/16 4/24 12/5 12/10 17/22 31/20 43/10 46/13
**wishes [2]** 32/15 45/9
**withdrew [1]** 29/13
**within [8]** 22/11 24/2 37/1 37/24 42/4

43/3 45/25 47/7
**without [2]** 36/1 43/6
**won't [2]** 14/15 36/10
**words [1]** 23/14
**work [7]** 14/1 22/11 24/1 24/12 24/14 37/5 41/7
**worked [1]** 26/8
**working [3]** 21/17 24/10 30/4
**world [2]** 35/6 36/14
**worry [1]** 36/16
**would [45]** 3/10 5/6 6/7 6/8 7/11 7/11 10/23 11/1 13/15 13/17 13/18 13/19 13/21 14/1 14/2 14/2 16/8 16/20 18/21 19/8 19/8 27/9 29/19 30/7 30/11 31/2 31/4 32/10 35/25 36/5 37/24 37/24 38/17 39/21 40/2 43/11 43/15 44/1 44/16 44/24 45/3 45/12 46/21 47/3 47/4
**writer [1]** 4/7
**written [1]** 4/12
**wrong [1]** 39/25
**wrote [1]** 21/13

## Y

**yeah [5]** 9/10 32/8 43/22 44/19 44/22
**year [5]** 17/13 18/10 19/13 25/12 26/7
**years [12]** 12/14 12/20 14/21 17/25 18/9 19/19 24/23 25/6 26/23 27/1 34/24 42/2
**years' [1]** 42/18
**yes [21]** 3/14 3/24 6/15 6/19 7/6 9/17 11/21 19/10 23/18 24/17 26/8 26/24 28/15 33/10 43/8 44/13 44/21 46/15 47/21 47/25 48/5
**yet [3]** 16/3 22/22 40/20
**yields [1]** 10/20
**York [2]** 28/21 34/24
**you [120]**
**you'll [1]** 24/1
**you're [12]** 5/9 6/17 22/10 22/13 22/16 22/18 22/24 23/9 23/16 26/2 31/22 43/4
**you've [2]** 33/1 44/7
**young [2]** 12/20 18/10
**your [68]**
**Your Honor [46]** 2/7 2/11 7/6 7/22 7/24 8/22 9/8 12/7 12/12 12/17 13/12 14/4 15/3 15/24 16/15 17/4 17/15 17/24 18/19 18/22 21/3 21/23 24/13 25/11 25/22 26/1 27/5 27/8 27/10 27/14 29/1 29/22 30/12 31/2 31/3 31/24 32/17 33/1 33/7 44/13 44/15 44/16 46/14 46/18 47/15 48/6
**Your Honor's [2]** 14/16 14/18
**yourself [1]** 23/13

## Z

**ZELJKA [3]** 1/16 2/12 28/5
**Zeljka Bozanic [1]** 2/12
**Zelle [1]** 19/8
**zero [4]** 7/12 8/11 40/2 40/7
**zero-point [3]** 7/12 8/11 40/2